J. J. Owen v. National Hatchet Company, Appellant.

**Judgments:** WHEN APPEALABLE. While there must be an entry of judgment before an appeal can be taken, and a mere memorandum upon the judge's calendar or the filing of a written form of entry not in fact spread upon the record is not a judgment or decree; still, an entry by the court upon the journal dated and signed by the judge, showing the commencement and conclusion of argument, decree granted for plaintiff as prayed, judgment against defendant for cost and that defendant excepts, is an appealable judgment, although the formal judgment or decree was not entered until after the appeal was taken.

**Contracts:** CANCELLATION: FRAUD: EVIDENCE. In this action to rescind a contract and cancel notes given for an exclusive agency to sell a patent device, the evidence is reviewed and held insufficient to show that the execution of the same was induced by fraud or misrepresentation.

**Bills and notes:** CONSIDERATION. A failure to properly execute a collateral agreement as a consideration for which notes are given does not necessarily render the notes, when properly executed and delivered, void for want of consideration.

**Contracts:** UNILATERAL AGREEMENTS.   Where a contract is made in duplicate failure of one of the parties to sign both papers does not render the agreement unilateral.

**Contracts:** REVOCATION.   Where one party to a contract made with an agent of the other fails to repudiate the agreement until after notice of revocation by the principal, he can not then withdraw from the same except on grounds entitling him to a rescission.

**Same:** RESCISSION: FRAUD: EVIDENCE.   In this action to cancel a contract for an agency to sell a patented article in a specified territory, the evidence of fraudulent representations as to patents covering the article, or of failure of consideration, is held insufficient to justify rescission.

**Expert evidence:** PROOF OF PATENT LAWS.   The patent laws of the United States are not the laws of a foreign country and are not therefore subject to proof by expert evidence.

**Patents:** PRESUMPTION AS TO VALIDITY.   There is a presumption in favor of the regularity, and validity of a patent issued by the government.

**Same:** RESCISSION.   The fact that the purchaser of the right to sell a patented article in a specified territory paid too much therefor is not ground for rescission of the contract, in the absence of fraud.

*Appeal from Marshall District Court.*—HON. C. B. BRADSHAW, Judge.

FRIDAY, JULY 2, 1909.

SUPPLEMENTAL OPINION, SATURDAY, MAY 14, 1910.

ACTION in equity for the cancellation of certain promissory notes and rescission of contract.   Decree for plaintiff, and defendant appeals.—*Reversed.*

*Boardman & Lawrence,* for appellant.

*Jesse Gouge* and *J. M. Whitaker,* for appellee.

Weaver, J.—The plaintiff alleges that on May 5, 1906, one Smith, an officer and agent of the defendant, induced him to execute and deliver to the defendant seven promissory notes for $100 each without any consideration therefor. The substance of the claim, as stated, is that defendant, through its agent, represented that it had a valuable patent right for the manufacture and sale of a combined "hatchet, hammer, wire cutter, wire splicer, pinchers, leather punch, staple and nail puller, screw-driver, hoof trimmer, and pruning knife," and that the same was protected by valid letters patent, and was a valuable and marketable device; that plaintiff, believing and relying upon said representations, executed · and delivered the notes in consideration of the promised transfer to him of the exclusive right to sell said device in certain named counties of the state of Iowa; that said representations were untrue, and were known by the agent acting for the defendant to be untrue; and that the rights and interests pretended to be transferred in consideration for the notes were of no· value whatever. He claims, also, that a written or printed contract signed by him at the same time for the purchase of said rights was never, in fact, consummated, and that, upon learning the truth of the situation, he at once repudiated the agreement, and demanded the return of the notes, for the cancellation of which he asks .a decree. Defendant admits the making and delivery of the notes, but denies all other allegations of' the petition. This issue being tried to the court, a decree was entered for the plaintiff, and defendant appeals; notice thereof being served April 15, 1907.

I. On November 1, 1908, while the foregoing appeal was still pending in this court, the appellee, claiming that the decree appealed from had not in fact been entered by the clerk at the date of the service of the notice of appeal, made application to the trial court to correct the record to show

1. Judgments: when appealable.

that fact. On a hearing of this application, the court found that the decree was not spread upon the record until some time during the month of May, 1907, and directed the clerk to "note on the record of said decree the exact date of such record, and, if he can not do so, note thereon that by the ruling of the court it has been adjudged that such decree was not spread upon the record until some time after April 15, 1907." From this order defendant has also appealed. The appellee in reliance upon the same order has moved this court to dismiss the appeal because it now appears that the notice was prematurely served. Concerning this branch of the controversy, we will say that the following facts are shown without substantial dispute: The cause having been submitted for decision, the trial court announced its finding in favor of plaintiff on April 12, 1907, and at the same time made an entry in its calendar as follows: "Arguments commenced and concluded. Decree for plaintiff as prayed. Judgment against defendant for costs. Defendant excepts." On the same day the clerk made in the journal of his office under the title of this case the following entry: "Now, to wit, April, 12, 1907, the arguments of counsel are commenced and concluded. Decree is granted for plaintiff as prayed and judgment is rendered against defendant for costs. Defendant excepts." This record was duly signed by the judge presiding at the term. On the same day the clerk entered in a book of his office known as the "combination, appearance and judgment docket," a memorandum of the judgment against the defendant for costs. A formal decree was prepared by the counsel and signed by the judge under date of April 12th, and filed with the clerk on the following day, April 13, 1907. On the question whether the formal decree was actually spread upon the record prior to April 15, 1907, there is some uncertainty in the record. One of plaintiff's counsel testifies that he examined the record

twice within thirty days after the notice of appeal was served, and on neither occasion had the record been made. The clerk, who himself copied the decree into the record, testified that it was the invariable rule of his office to make the brief entries first above referred to on the same day on which the memorandum order of the court for a judgment or decree was entered in the calendar, but, owing to the pressure of work, the actual copying of the formal or extended decree was not always done at once, but it was attended to as quickly as possible under the circumstances. He is not able to state the exact date when the entry was extended, or whether it was done before the close of the day of April 15, 1907. His deputy's testimony is to the same effect. Giving to this testimony the construction most favorable to plaintiff, it still shows the existence of an appealable judgment or decree on April 15, 1907. Let us suppose that no formal decree had ever been presented to or signed by the judge and ever spread upon the clerk's books, and that the appeal had been taken as it was taken on April 15, 1907, would a motion in this court to dismiss the appeal for want of sufficient showing of an appealable judgment be well taken? Again, let us suppose that no other record of the trial court's decision had ever been made than is contained in the record of April 12, 1907, "Trial concluded; decree granted for plaintiff as prayed; judgment entered against defendant for costs," and, no appeal being taken therefrom, defendant had thereafter brought suit against plaintiff upon the promissory notes in controversy—could it be successfully contended on its part that the judgment so entered, brief and informal as it may be, was not a complete and final adjudication against its right to maintain such action? In our opinion both these inquiries must be answered in the negative. While the entry does not set out in detail the relief granted, it does declare plaintiff entitled to the relief prayed for, and this may be ascer-

tained by reference to the pleadings. If, upon the trial of divorce proceedings in which the plaintiff asks for an absolute dissolution of the marriage contract, the court takes a submission of the case upon its merits and makes the simple entry, "Decree is granted as prayed; judgment against defendant for costs," and plaintiff upon the strength of this record marries another than the defendant, would he be liable to a charge of bigamy? Or, upon his death, would the defendant be entitled to demand dower in his estate simply because an extended formal decree had never been written into the record? The mere statement of the proposition is its sufficient refutation. The rights of parties litigant are not to be sacrificed by such technical niceties. True, we have often held in cases on which appellee here relies that a judgment must be entered before it is appealable, and that a mere memorandum upon the judge's calendar or the filing of a written form of entry not in fact spread of record is not a judgment or decree, but in none of these cases has it been held that entry such as is here presented actually entered of record is not an appealable adjudication. See *Kuhlman v. Wieben,* 129 Iowa, 188; *Cameron v. Railroad Co.,* 8 N. D. 124 (77 N. W. 1016). The appellee's motion to dismiss the appeal is therefore denied, and the order of the trial court correcting the record is reversed.

II. Coming now to the appeal in the main case, it appears that plaintiff is sixty-one years of age, and is a farmer whose activities have not been confined exclu-

2. CONTRACTS: cancellation: fraud: evidence.

sively to farm work. He can read and write, has executed written contracts and leases, kept a checking account at the bank, and has bought and sold live stock. Prior to the transaction in controversy, he purchased the right to sell a patent wagon jack in seven Iowa counties, and was engaged in promoting that venture. From some source he heard that defendant was manufacturing or about to begin the

manufacture of the combination tool above mentioned, and, thinking that he could profitably handle the same in connection with the wagon jack, wrote to the defendant at Marshalltown concerning it. This correspondence was opened early in the year 1905. Later he went to Marshalltown, visited the factory, examined the device, and had some further talk concerning the purchase of the rights thereto in the same counties for which he held the right to the wagon jack. He was told that the company was not yet ready to sell the hatchet or territory under the patent. None of the tools had yet been finished except perhaps a few samples, though some of the parts had been made, and were shown the plaintiff in the rough. He was told, also, that defendant contemplated making a somewhat different pattern of the same device, which is spoken of as a "solid-jaw hatchet." In May, 1906, Smith, defendant's agent, went to Waterloo, where he met plaintiff, and the negotiations were renewed. According to the plaintiff's version of the interview, Smith impressed upon him the merits and value of the combination tool, and pictured in glowing terms the profits to be made out of its sale and the sale of territory under the patent. Plaintiff hesitated somewhat, but in the end, being compelled to meet another appointment, the parties went to Smith's room, where the notes and contract were hurriedly executed and delivered, Smith agreeing to have a duplicate contract prepared and executed by the company and forwarded to plaintiff by mail. So far as shown by the record, there was no stratagem or trick made use of by Smith to mislead the plaintiff or prevent his reading and knowing the terms of the contract, unless it be found in the hypnotic eloquence which bubbles with seductive spontaneity from the lips of all patent right canvassers and book agents. We have studied plaintiff's own testimony with considerable care, and fail to find any suggestion of a false representation on the part of Smith,

unless it be claimed that his assertion that the device was "all covered up with patents" was untrue. He does say that Smith told him that the company had sold five thousand to seven thousand of the solid-jaw hatchets and about one thousand five hundred of the other variety, but as he concedes he had but a short time before visited the factory, and there learned that the tools were not ready for the market, we think he could have been in no manner deceived by the statement, if it was in fact made. Shortly after the meeting in Waterloo and the delivery of the notes to Smith, the defendant signed and executed a duplicate of the contract, and mailed it to the plaintiff. By this time the enthusiasm of the latter had naturally cooled, and, upon reading the instrument, he discovered, as he says, that "it was all one-sided," and then for the first time consulted his attorney. Thereupon either in person or by attorney he wrote defendant repudiating any obligation under the contract, or, to use his expression, "refusing to accept it" and demanding a surrender of his notes. The demand was refused, and this action was instituted December 26, 1906.

By the terms of the contract the plaintiff, in consideration of the sum of $700, is given an exclusive agency to sell the National Combination device for a term of three years in seven named counties, subject to a condition by which, in case he fails for a period of six months to apply himself to the business of selling said device or appointing subagents for that purpose, the contract may be forfeited. It was further agreed that, as soon as the company should have manufactured and have ready for introduction the solid-jaw hatchet, the plaintiff should be entitled to an agency therefor during the remainder of the term without further charge. It will be observed that this contract does not profess to sell territory under the patent, but to give the plaintiff an exclusive agency for the sale of a described tool which the writing says is

manufactured under patents No. 607,448 and No. 784,950, and that his authority in the premises consisted in the right to sell the tool and appoint subagents for such sales within certain counties. To sustain the decree below the appellee relies upon the following propositions:

First. It is said that the written contract was never properly executed, and is of no force or validity. This might be conceded, and yet it would not necessarily follow that the promissory notes which were executed and delivered in due form are without consideration. But the objection is not well founded.

3. Bills and notes: consideration.

It appears that in drawing the contract Smith used a printed form, at the bottom of which were printed the words: "The National Hatchet Company, By ————, Gen. Soliciting Agent. ————, Party of the Second Part." The blank in the body for the name of the agent appointed was also left unfilled. In subscribing this paper, plaintiff appears to have written his name in the first-mentioned blank. On the following day the instrument was ratified by the defendant by attaching thereto the following words: "Approved May 16, 1906. The National Hatchet Company by E. E. Valentine, President. By G. A. Smith, Secretary." And a duplicate form was made, signed by the company, and forwarded to the plaintiff. We see nothing in these irregularities to affect the sufficiency of the contract. The two instruments, taken together, leave no doubt as to the meaning and intent of the parties. Plaintiff does not deny that he signed the instrument as the second party to the agreement, and all the essential matters of agreement are clearly and fully expressed. The failure of both parties to sign both papers makes it none the less their mutual contract. It is not a unilateral contract, and it requires no reformation to be made intelligible or to conform it to the intention of the parties, nor does

4. Contracts: unilateral agreements.

plaintiff make any claim to the contrary in his testimony. 2 Page on Contracts, sections 571, 572.

Had plaintiff recanted and notified defendant of his withdrawal from the deal before the contract had been ratified, there would be fair room for the contention that

5. CONTRACTS: revocation.

no agreement had ever been perfected, but he waited until he was notified of the ratification, and it was clearly too late to declare the deal off unless there be ground on which he is entitled to rescind.

· Second. It is said that there was such fraud on defendant's part and such failure of consideration as will justify a rescission by the plaintiff. Though the allega-

6. SAME: rescission: fraud: evidence.

tions of fraud made in the petition are extremely broad, yet practically the sole ground relied upon in argument is the fact, as claimed, that Smith told the plaintiff that the combined tool was "all covered up with patents," when, in truth, the only thing covered by the defendant's patents was the device by which the various parts entering into the combination were attached to the arms by which they were operated. It is impossible to believe that plaintiff supposed that the patent could cover all the separate tools entering into the combination. Hatchets, hammers, screwdrivers, and other similar appliances have been in common use in all civilized lands since the day of Tubal Cain, and the novelty, if any, in the device in question, was in the manner and means by which they were supposed to be combined into a single tool. Had the agent convinced the plaintiff that this most versatile and convenient instrument could be utilized for milking his cows, churning his butter, or playing his piano, he would certainly have understood that the patent, if any, covered the operating device by which these results were obtained, and not that any patent was claimed upon the cow, the churn, or the piano.

The claim that the patent covered nothing of any

material value, and that the combined tool is not, in fact, patentable, is supported principally by the testimony of the witness Kennedy, who is a patent lawyer, and has had experience in practice before the Patent Office. He was permitted to testify over proper objections as to the "rule of the Patent Office under the law relative to the breadth and scope of a patent and what it is governed by," and that "the effect of describing an invention in specifications and omitting to make a claim covering any part of the specifications" would be "that such matter would be abandoned to the public—become public property." He was allowed to state what the patents in the present instance cover, and what they do not cover, and that certain features of the combined tool are not covered by said patents, and that still others are not patentable. We are well satisfied that this testimony or the greater part thereof is wholly incompetent. The patent laws of the United States may not be familiar to the state courts and to lawyers not practicing before the department at Washington, but they are not the laws of a foreign country to be proved by the testimony of experts. The sources from which experts learn the law are open to the court, and it is its duty to hear all the testimony, and determine for itself the law applicable thereto, as well as the breadth and scope of the patent.

7. EXPERT EVIDENCE: proof of patent laws.

Assuming for the sake of the argument the correctness of appellee's position that it is within the province of the state courts to determine the patentable or non-patentable character of the device in question, there is at least a presumption in favor of the regularity and validity of a patent granted and issued by the proper department of the government, and we find no competent evidence in the record to rebut that presumption. Nor do we find anything fairly tending to show that the patent held by the

8. PATENTS: presumption as to validity.

defendant is not of sufficient breadth and scope to protect every feature of the combined tool which plaintiff had any reason to believe or suppose was protected by it. He admits that, before he purchased, he knew that a tool of somewhat similar kind had been placed on the market by a third party, but says that Smith told him that defendant's patent was superior or first in right, and that the interference would be stopped. Accepting this statement as true, he bought relying upon defendant's promise to take action for his protection in the future, and this can not be relied upon as any excuse or justification for repudiating his purchase without waiting or giving the defendant any opportunity to perform such promise. In considering this phase, it is not to be overlooked that defendant did not sell, and plaintiff did not purchase, a patent or a patent right. The subject of the agreement was an agency to sell the goods manufactured by defendant within a specified territory, such sales to be made by the plaintiff or by subagents of his appointment.

We think it unprofitable to pursue this discussion further. It may be entirely true that plaintiff permitted his hopes of large profits to be unduly excited by defendant's agent, but there is an entire lack of testimony as to any material misrepresentation by him. It may also be true that there is little intrinsic value in the tool for which he took the agency, but he knew precisely what he was buying, and if he purchased at too great a price, this, in the absence of fraud or deception, affords no ground for rescission. But it is to be said that there is an utter failure of proof that the right purchased is without substantial value. Plaintiff has made no effort whatever to use or exercise the right purchased by him. With his notes and contract outstanding he has refused to demonstrate by practical effort the alleged worthlessness of the consideration received for them. He may not be endowed with the peculiar qualities which fit a man to shine in

the line of business he sought to enter, but he is not the first man, and doubtless will not be the last, who has bought the knowledge of his lack in that respect at a high price. As wise a man as Benjamin Franklin once paid an extravagant price for a whistle. Plaintiff was not pursued or run down by the defendant and its agents. He sought them out. He had the matter in mind for a year before the contract was made. He has got all his contract calls for, and, while the speculation may be a losing one to him, we think it is not within the province of the court of equity to relieve him from the performance of the agreement into which he so deliberately entered.

Third. It is finally said that the contract is unconscionable. It does not so appear upon its face, and nothing is shown to demonstrate that such is its practical effect. 9. SAME: rescission. As we have before remarked, plaintiff has made no effort to test the value of his bargain, and a contract of purchase is not shown to be unconscionable simply by proof that the buyer has agreed to pay more than a thing is worth.

We are of the opinion that the decree rendered by the district court is not sustained by the evidence, and it is therefore reversed and plaintiff's bill ordered dismissed.—*Reversed.*

### SUPPLEMENTAL OPINION.

*Boardman & Lawrence,* for appellant.

*Jesse Gouge, J. M. Whitaker,* and *Mears & Lovejoy,* for appellee.

PER CURIAM.—An opinion was filed in this case July 2, 1909, that is reported in 121 N. W. 1076. A rehearing was granted, and the case has been reargued and resubmitted. We have again carefully considered the points

presented by both parties, and we reach the conclusion that the former opinion is right in all respects, and that it should be adhered to. It is therefore readopted and made the opinion upon this rehearing.—*Reversed.*

EVANS, J., dissents.