### In re COTTON & PRESTON.

(District Court, S. D. Georgia, S. W. D. September 30, 1910.)

1. BANKRUPTCY (§ 407*)—DISCHARGE—GROUNDS FOR REFUSAL—OBTAINING PROPERTY ON FALSE STATEMENT.

A written statement, made by a bankrupt to a creditor, 18 months prior to the bankruptcy, on the occasion of the purchase of a considerable bill of merchandise on credit, afterward fully paid for, which statement was on a printed blank furnished by the creditor and filled out by him from answers to questions propounded to the bankrupt, although materially false and containing a provision that it was made as a basis for credit for purchases "now or hereafter made, unless changed by written authority from the undersigned," cannot be made the basis of an objection to the discharge of the bankrupt, under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550, as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), making it a ground for refusal of a discharge that the bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cause of another purchase from the same creditor a year afterward, and six months prior to the bankruptcy, of goods which remained unpaid for; the statement not having been made "for the purpose of obtaining such property on credit," within the fair intendment of the statute.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF DISCHARGE—OBTAINING PROPERTY ON FALSE STATEMENT—PARTNERSHIP.

A materially false statement, made by one member of a bankrupt partnership for the purpose of obtaining property for the partnership on credit, without the participation or knowledge of his partner, cannot be interposed as a bar to the discharge of the innocent partner.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

In the matter of Cotton & Preston, bankrupts. On exceptions by Ragan, Malone & Co. to report of referee as special master recommending discharge. Exceptions overruled, and· discharge granted.

See, also, 183 Fed. 190.

The following is the report of Max Isaac, Special Master:

Ragan, Malone & Co. filed their appearance in opposition to the discharge applied for in this case by Cotton & Preston as a firm, and E. S. Cotton and F. F. Preston as individuals, and presented their objections thereto, as follows, to wit:

"(1) Because said bankrupts obtained property on credit from them upon a materially false statement in writing, made to them for the purpose of obtaining such property on credit; such statement being made to them August 5, 1907, and being, as therein shown, made for the purpose of obtaining credit and to be binding for such purchases 'now or ·hereafter made, unless changed by written authority from the undersigned.' A copy of such statement is hereto attached and made a part thereof, marked 'Exhibit A.' On such statements these debtors extended credit and 'sold said bankrupts goods from time to time, and at the time the petition in bankruptcy was filed said bankrupts were, and are, indebted to these debtors on account of such purchases as shown· by statement of account hereto attached and made a part hereof, marked 'Exhibit B,' to which reference is prayed as often as may be. necessary. Said statement was materially false, in that said bankrupts begun business with a capital only of $450. In said statement they say they begun business with a capital of $3,000.

·"(2) On August 5, 1907, notes and accounts belonging to said bankrupts were about $300 or $400 in amount. In said statement they claim to be $1,000 in amount.

"(3) On August 5, 1907, E. S. Cotton, one of said bankrupts, owed his wife some $3,000. In said statement the claim is made that said bankrupts owed no money whatever to wives or relatives."

"(4) Said statement is in other particulars incorrect."

To these objections the bankrupts filed their general and special demurrers, in which they contend that no legal or statutory allegations are set forth in said specifications that would bar the discharge applied for; that said specifications do not allege that said false statement in writing, upon which the property was alleged to have been procured, was knowingly and falsely made by said bankrupts at the time it was so made; that said specifications do not allege that said statement was made for the purpose of procuring the specific property or credit for which debtors now contend that said bankrupts are indebted to them; that said specifications show that the copy written statement attached thereto as an exhibit and referred to therein and the copy account attached thereto and referred to therein, with the alleged statement, was executed on the 5th day of August, 1907, that the first line of credit extended or goods sold to said bankrupts was from August 6, 1907, to August 30, 1907, and that said bankrupts paid for all of said goods, property, or line of credit, and that the alleged written statement could not be the basis of the

credit for the particular goods for which bankrupts are now indebted to objectors as shown by said account attached; that neither said bankrupts, nor either of them, ever subsequent to August 5, 1907, made to objectors any other written statement, and that no new arrangements or no new statement was made upon which a future line of credit or future bill of goods was so procured from objectors; that said written statement recites no consideration or new promises of statements which could be the basis of credit for subsequent bills of goods, after the shipment and payment therefor of the original bill of goods shipped out to said bankrupts, made after the execution of said written statement; that the words "now or hereafter made, unless changed by written authority from the undersigned," incorporated in said written statement, are not binding upon bankrupts, for the reason that there was no consideration, nor new statement, nor new promise flowing to these bankrupts, or injury occurring to these objectors, moving the execution of such words or sentence contained therein, and that, after these bankrupts had paid for the original bill of goods shipped out immediately after said written statement was executed, said language seeking to bind these bankrupts for future purchases from objectors became nudum pactum and cannot be enforced; that said specifications did not allege that the goods or property for which objectors now claim these bankrupts are indebted to objectors were sold, or the credit extended, on the faith of said written statement; that is, that the said written statement was made prior to and for the purpose of procuring the identical credit for which objectors now claim these bankrupts are indebted to them. There are numerous other grounds of special demurrer, directed to the insufficiency of the objections referred to, which grounds of demurrer are mere amplifications of those already stated and need not be repeated here.

By agreement of counsel, the special master reserved his ruling on the demurrers, for the reason that his decision thereon would not finally end the matter in the event the District Judge differed with him, should he sustain the demurrer, and it was thought advisable to take the testimony and pass on the entire case. If the demurrer ought to be sustained, the special master would make his ruling on the demurrer alone. If he concluded to overrule the demurrer, he would then pass on the merits of the case.

### Statement of Facts.

Evidence was heard in support of and in opposition to the said objections, a transcript of which is hereto attached, and respectfully referred to, and made a part of this report. From this evidence the special master finds as follows: Ragan, Malone & Co. are a firm of wholesale merchants doing business in Atlanta, Ga. Their salesman had called on Cotton & Preston, a firm then engaged in the mercantile business at Broxton, in Coffee county, Ga. He had endeavored to obtain their orders for goods; but, failing in this, his house made direct efforts to sell goods to Cotton & Preston, and on their own motion invited Cotton & Preston to come to Atlanta and call on them and purchase goods. To further carry out this effort to sell them goods, Ragan, Malone & Co. sent a check to Cotton & Preston to cover traveling expenses of one member of the firm to Atlanta and return, and F. F. Preston, a member of the firm of Cotton & Preston, proceeded to Atlanta to call on Ragan, Malone & Co. to look over their stock of goods with a view of making purchases.

Having selected goods aggregating $821.68, Preston was invited into the office of this concern, and Mr. Ragan, the senior member of the firm and the credit man, asked Preston for a financial statement of Cotton & Preston. Preston, without having his books before him, merely from his recollection, then and there proceeded to furnish Ragan the figures which he (Ragan) filled in the blanks in the stereotyped printed form used by the firm for the purpose, which statement contains the following language: "Statement of Cotton & Preston, made to Ragan, Malone & Co., for the purpose of obtaining credit, and this statement shall be binding for each purchase now or hereafter made, unless changed by written authority from the undersigned." And again: "The above property in my [or our] name, and titles perfect, paid for, and no

mortgages or liens in any shape upon it. In consideration of credit extended or to be extended on the faith of my [or our] solvency as shown by this statement, I [or we] hereby waive and renounce for himself [or ourselves] and family any and all homestead exemption rights under the laws of the United States or of any state as against the payment of any indebtedness now owing or hereafter existing in favor of said Ragan, Malone & Co., and this waiver shall apply for all property now owned or hereafter acquired by the undersigned."

The evidence touching the circumstances under which the statement aforesaid was made is not altogether in harmony. Mr. Ragan testified that Preston came to Atlanta to buy goods, and Ragan asked him if he wanted to buy for cash or on credit. and he said, "On time," and Ragan told him it was necessary for Ragan, Malone & Co. to have a statement of the financial condition of Cotton & Preston, and he said he would give him the statement. They went into Ragan's office, and the written statement was made as a basis of credit for what goods Preston might buy. Ragan also claims that he told him (Preston) that he could order goods at any time on this statement if satisfactory, could also buy from their traveling salesman, and that he called Preston's attention to the fact that this statement held good for future purchases.

On the other hand, Preston's version of this incident is that nothing was said to him about the "statement being binding for each purchase thereafter made, unless changed by written authority from the undersigned." After he went through the stock of goods, he went into the office of Mr. Ragan, and Mr. Ragan said that he (Preston) might make a statement of the financial condition of the firm, and Preston told him he was not prepared, and he said that he wanted some idea of the condition of the firm. He got the blank, and asked Preston the questions, and Preston answered them. Preston insists that the statement insisted upon is not the identical statement made by him while in Atlanta. He claims that the questions asked him by Ragan did not embody one to this effect. "Amount indebted to your wife or relatives." In this connection Mr. Rogers, a member of the firm of Rogers & Heath. representing the bankrupts, testified that he had examined the statement submitted here as a correct copy of the original, and another copy attached to certain criminal proceedings pending against F. F. Preston in Atlanta, which is said to be a correct copy of the original, and the copy in Atlanta does not contain the statement about the amount indebted to wife and relatives, and to whom indebted. and when due. Mr. Rogers testified that he had carefully examined the statement in Atlanta.

The specific grounds alleged by the objectors. wherein it is claimed that said statement was materially false, are as follows: On August 5, 1907, Preston stated to Ragan, Malone & Co. that Cotton & Preston began business with a capital of $3,000. The facts are as follows: Cotton & Preston embarked in business September 1, 1905, at Broxton, Ga. Their capital stock and assets consisted of a bankrupt stock of goods, which they bought at private sale from one Mark Lott for $1,294 in cash. This money was furnished by E. S. Cotton, the senior member of the firm, who had borrowed it from his wife in 1901, to whom he gave his note on September 14, 1905. Cotton testified at a previous examination that when the firm of Cotton & Preston was formed he had $500 in the business of Cotton Bros., and that Preston had $150; that neither of these amounts were applied to the purchase price of the bankrupt stock, or otherwise put into the business of Cotton & Preston, as Preston owed Cotton $150, and it was applied accordingly. Neither of them had any other money. Preston testified that, when the firm of Cotton & Preston was founded in 1905, he put in as capital $150 and Cotton put in $1,250. He contends that the bankrupt stock, which was bought for $1,295 at private sale, really amounted to $2,500 or $2,600.

The next charge made in the objections is that on August 5, 1907, Preston stated to Ragan. Malone & Co. that Cotton & Preston had notes and accounts amounting to $1,000. whereas the evidence itself shows that the notes and accounts amounted to about $300 or $400. At the hearing of the objections to the discharge, Preston testified that the amount of solvent debts on April

5, 1907. amounted to $1,000, as claimed by him. and since that time he has examined the books of the firm of Cotton & Preston, and that there were $1,000 or more due them on that date.

The third charge made in the objections to the discharge is that on August 5, 1907. E. S. Cotton owed his wife some $3,000. It is claimed that in the statement it is stated that said bankrupts owe no money whatever to wives or relatives. Inasmuch as the evidence positively shows that no such item appears in the copy of the original statement attached to the criminal proceedings in the criminal court of the city of Atlanta, as testified to by Mr. Rogers. and which is supported by the evidence of Preston to the effect that no such question was asked him, the special master feels that, in the absence of the original statement, these charges cannot be sustained.

## Findings of Law.

The bankrupts in their demurrer raised an interesting question involving the construction of the amendatory act of 1903, now embodied in section 14b (3) of the bankruptcy law. The point arises: First. Because of the appearance in the alleged false statement of the following language: "This statement shall be binding for each purchase now or hereafter made, unless changed by written authority from the undersigned." Second. Because the account attached to the specifications of objections to the discharge shows that the purchases made by the bankrupts were all more than five months, and in some instances even longer than this, prior to the filing of the petition. and more than a year after the making of the alleged statement, and for these reasons that the objectors could not seriously contend that the said goods were sold upon the faith of the statement made more than a year prior to said purchases, and nearly six months before the filing of the petition in bankruptcy.

"The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by parties in interest, at such time as will give parties in interest a reasonable opportunity to be fully heard and investigate the merits of the application and discharge the applicant unless he has * * * (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." Bankruptcy Act, § 14b.

"The effect of this new objection will be that every tradesman whose credit is not unquestioned will be asked to give a mercantile statement as a condition precedent to dealing, and, it may be suggested, a new statement with every transaction." Collier on Bankruptcy (7th Ed.) p. 284.

In construing the phrase "for the purpose of obtaining such property from the creditor." Mr. Collier says: "This element will presumably always exist where a sale results from the statement. At the same time there must be some proof of intention, though it need not amount to intent to defraud. This interesting question, as to how far a false statement once made may be availed of by a creditor, who subsequently sells a second or other bill of goods without asking a new statement or for a correction of the old, is not important, since the Senate's amendments to the Ray bill. The crucial words are 'such property.' They limit this objection in a way that will prove troublesome in practice. Statements made to mercantile agencies, unless, perhaps, in the form of special reports, the giving of which by the purchaser can be proven to have been 'for the purpose' of the identical creditor in question, will, it is thought, be of no value as objections to discharges. although it has been suggested that the statement need not be made directly to the person defrauded. The striking out from the Ray bill by the Senate of the words 'or of being communicated to the trade' is significant." Collier on Bankruptcy (7th Ed.) pp. 286, 287. See, also, as to the suggestions that a new statement must accompany each transaction, In re Dresser & Co., 13 Am. Bankr. Rep. 620. 144 Fed. 318.

I have been unable to find any decisions directly in point as to the binding effect of the clause in the statement that it should cover future purchases. The bankruptcy act itself, as contained in the amendment, seems to negative such right. In Re Shaffer, 22 Am. Bankr. Rep. 150, 169 Fed. 726, Judge Day-

ton says: "Creditor must rely upon it (the statement) when parting with his property, and if he did so rely upon it. and it was materially false in fact, it is sufficient to defeat a discharge. If the creditor did not rely on it, or if the debtor did not make the statement for obtaining the property on credit, it will not bar a discharge, no matter how false the statement may be"— citing Loveland on Bankruptcy (3d Ed.) 809; In re Scott, 11 Am. Bankr. Rep. 327, 126 Fed. 981; In re Harr, 16 Am. Bankr. Rep. 213, 143 Fed. 421; In re Peterson, 10 Am. Bankr. Rep. 355; In re Goodhile, 12 Am. Bankr. Rep. 380, 130 Fed. 782; In re Dresser, 13 Am. Bankr. Rep. 616, 144 Fed. 318; In re Pincus, 17 Am. Bankr. Rep. 331, 147 Fed. 621. In Re Terens, 22 Am. Bankr. Rep. 897, 172 Fed. 939, Judge Quarles says: "It is matter of common knowledge that such statements are frequently intended as a continuing representation for indefinite periods of time. I am of opinion that the date of the statement is immaterial, if property has in fact been obtained upon the strength of it within the four-months period, as is the case here. We are not called upon to decide whether under any circumstances the four-months limitation can be read into the third subdivision of section 14b, and merely hold that, where goods have been furnished and credit has been extended on the faith of such statement within four months of the bankruptcy, the date of the property statement should be held immaterial."

In the case just cited, the bankrupt, in behalf of his firm, made a property statement to the International Harvester Company in writing, and signed the firm's name thereto and his own name as a member of the firm, representing certain facts as to the financial standing of the partnership, "for the purpose of obtaining credit from you, or as a basis for credit for future business or extending past-due indebtedness." This statement was made upon a printed blank furnished by the Harvester Company. Opposite the printed interrogatory, "Owe bank (loan or overdraft)," there was written in pencil the word "None." This blank was filled up by the agent of the Harvester Company from information given him by the bankrupt as the several questions were read and propounded to him. Evidence was then offered showing that this statement was relied upon in shipping the goods and extending the credit to the firm. Within four months of the bankruptcy goods were shipped by the Harvester Company to the firm, as it alleges, upon the strength of this continuing representation. At the time this statement was made the firm did owe a certain bank $5,000. The trial judge held that, inasmuch as this statement was made within four months of the filing of the petition in bankruptcy, the date of the property statement should be held immaterial. In the case at bar, however, the statement was made fully a year and six months before the filing of the petition in bankruptcy, and more than a year before the last items of credit extended thereon; the last item of credit being extended nearly six months before the filing of the petition in bankruptcy.

The case most directly in point is In re Allendorf, 12 Am. Bankr. Rep. 321, 129 Fed. 981, in which it appears that some time prior to September 9, 1902, the bankrupt wrote one of the objecting creditors, requesting it to send him a bill of goods on credit. Before sending the goods the creditor requested a statement from the bankrupt of his financial condition. In response to this request the bankrupt, on September 9, 1902, sent the creditor a statement, from which it appears that he omitted to state that he was owing his wife's mother and another lady some $800 or $900, and this amount and about $375 to another creditor are not stated in the list of his liabilities. Upon receipt of this letter and statement, the creditor shipped the goods. The testimony of the bankrupt shows that the credit so obtained was afterwards settled and paid by him in January and February following. Afterwards, and on May 15, 1903, the bankrupt ordered by letter from this creditor another bill of goods amounting to $63, and on May 20th another order amounting to $250, both of which were filled and the goods shipped to the bankrupt. The credit man of the objecting creditor testified that the order of May 15, 1903, was the first the firm had received from the bankrupt for several months, and before approving it he looked up their information on Allendorf, and read his statement of September 9, 1902, and on the strength of that statement approved the order and shipped the goods, and that the order of May 20th

was also approved and the goods shipped on the strength of such statement. On these facts Judge Reed says: "Conceding, without so deciding, that a materially false statement made prior to the amendment of February 5, 1903, to the bankruptcy law, may be shown to defeat a discharge in proceedings commenced since that amendment, do the facts shown sustain this specification? That the omission by the bankrupt from this statement of the amount owing by him to his relatives and to the other creditor, if knowingly or purposely done, would be a material false statement, may be conceded. Does it, however, fairly appear that such statement was made for the purpose of obtaining goods ordered May 15th and 20th, respectively? The statement was made at the request of the creditor, when it received the order for goods some time prior to September 9, 1902, and to induce it to fill that order. There is nothing in the statement, nor in the letter of the bankrupt inclosing it to the creditor, to show that it was to be a continuing statement or representation of the bankrupt's financial standing. In fact, the statement is expressly limited to his condition on September 9, 1902; and the testimony of the credit man of this creditor and the letter of the bankrupt conclusively show that it was made to secure the bill of goods prior to September 9th only. Between that date and May 15th following (more than eight months) there was no dealing between these parties, and there is no evidence from which it can be fairly inferred that the statement was made for the purpose of obtaining the goods shipped upon the orders of May 15th and May 20th. To defeat a discharge, the bankrupt must have obtained property upon a materially false statement made in writing for the purpose of obtaining such property. The statement in question was not made for the purpose of obtaining the goods shipped by the bankrupt to this creditor on May 15th and 20th, respectively, nor any other property for which he is now owing. It follows that the specifications of objection in opposition to the discharge are not sustained by the evidence, and the discharge must be granted; and it is so ordered."

It will be observed that in the Allendorf Case there was no clause in the statement making it a continuing one, while the statement involved in this proceeding does contain such a clause. The case is interesting from its bearing upon the time which elapsed from the date of the making of the statement to the time of the making of the last purchases, and its importance will become more apparent when considered in connection with the decisions hereinafter referred to.

Even if the clause in the statement that it should be regarded as continuing is binding upon the bankrupts, when offered in opposition to their discharge, the next question which arises is: How far can this statement be regarded as continuing? It must be borne in mind that the statement was made on August 5, 1907, and the bulk of the purchases were made about that time. The petition in bankruptcy was filed one year and six months after the making of the statement, and the last purchases were made nearly six months before the petition in bankruptcy was filed.

In discussing the question, in the case of Mashburn v. Dannenberg, 117 Ga. 573, 44 S. E. 100 the Supreme Court of Georgia says: "The only statement made prior to the sale of the goods contained in the invoice of May 1, 1897, was the one dated July 14, 1896, which was more than nine months before the date of the invoice. As to the sale of goods in this invoice, the right of the plaintiff to rescind depended upon whether the credit was actually given upon the faith of the statement made in the preceding year, and whether, under all the circumstances, the plaintiff had a right to act upon the faith of a statement made to a mercantile agency at such a distant day in the past, and whether a merchant making statements to such agencies intends for them to be relied upon after the lapse of such a time. No arbitrary time can be fixed when a statement to a mercantile agency will become 'stale' and persons should no longer act upon it; but whether such a time has elapsed must be determined by the jury according to the circumstances of each case." See, in this connection, Waldrop v. Wolff, 114 Ga. 613 (4), 40 S. E. 830; Newman v. Claflin, 107 Ga. 89, 32 S. E. 943; In re Russell & Birkett, 5 Am. Bankr. Rep. 608.

Of course, the longer the interval the weaker the cause that makes such representation the foundation for a rescission. Newman v. Claflin, supra. While there may have been a moral obligation upon Preston to advise Ragan, Malone & Co. of each and every change in the financial condition of the firm of Cotton & Preston, if it is accepted as true that he understood this clause in the contract, no legal obligation arose whereby he was compelled or required to keep Ragan, Malone & Co. posted as to every material or immaterial change in the condition of the mercantile life of his firm. And it is probably this very idea which actuated the Senate in striking so much of the proposed amendment of 1903 as would by implication justify these continuing statements. In fact, it appears to me that this blank or statement prepared by Ragan, Malone & Co. is a contrivance arranged to protect them in all cases against loss by reason of persons going into bankruptcy who may be indebted to them in any amount for goods sold by them, regardless of the length of time which may elapse from the time of such sale to the time of bankruptcy, by filing objections to discharge and urging this statement as the grounds therefor.

While creditors are always a favored class in courts of equity, they are not to be encouraged in the embarrassment and harassment of debtors who have been so unfortunate as to be forced to take advantage of the bankruptcy act. "The release of the honest, unfortunate, and insolvent debtor from the burden of his debts and his restoration to business activity, in the interest of his family and the general public, are the main, if not the most important, objects of the bankruptcy act; and the burden of proof is upon creditors opposing the granting of a discharge to bring the inculpatory facts alleged by them strictly within the meaning of the exceptions enumerated within said statute." Hardie v. Swafford Bros. Co., 21 Am. Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785.

While the testimony of Mr. Ragan, of Ragan, Malone & Co., is positive that his firm extended credit in each instance upon the faith of the financial statement made to him by Preston, who can say that they did not act largely upon their past experience with Cotton & Preston, and not entirely upon the financial statement alone? This idea is very much supported by the fact, which appears in the exhibit attached to the objections, that the bankrupts made large payments, at times as much as $500 in cash, and at other times $300, $200, and $100 to Ragan, Malone & Co. on account of the purchases made by them. Indeed, their gross purchases from August, 1907, to August, 1908, amounted to $2,969.24, and their credits for cash payments made and merchandise returned aggregated $2,186.89. The purchases which remain unpaid for amount to less than $800. These items were purchased between May 12, 1908, and August 25, 1908, at a time when it cannot be presumed, without doing violence to one's conscience, that these bankrupts had formed the intention to file a petition in bankruptcy.

Finally, the making of the false statement by F. F. Preston, one of the partners, even in the regular course of the partnership business, cannot be interposed as a bar to the discharge of the firm, or of a partner who did not participate in the wrongful act and had no knowledge thereof. The testimony in this case shows that Cotton, one of the bankrupts, knew nothing of the statement, and, regardless of what conclusions may be reached as to Preston, Cotton cannot be denied his discharge. The Circuit Court of Appeals of the Fifth Circuit has held that there is no reason in law, and certainly none in business or morals, why an honest bankrupt should not be discharged, and that, when a partner who has no knowledge of the making of the false statement applies for his discharge, the same should be granted. Hardie v. Swafford Bros. Co., 21 Am. Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785.

## Conclusions of the Master.

I conclude that the third ground of the bankrupt's special demurrer, which raised the point that this statement could not be the basis of the credit for the particular goods for which the bankrupts are now indebted to objectors, should be sustained. The uncontradicted evidence showing that the goods

were obtained from six to nine months prior to the filing of the petition in bankruptcy, on a statement made a year and six months before the filing of the petition in bankruptcy, I conclude that these are not such goods as were obtained on a false statement in writing, such as is contemplated by section 14b (3) of the bankruptcy act. The only remaining charge against the bankrupts being founded purely on a difference of opinion as to the value of the merchandise comprising the capital with which this firm began business, I do not think that this is such a material discrepancy as would justify this court in declining to grant a discharge to these bankrupts.

The special master ascertains from the record before him that these bankrupts were allowed an exemption by the trustee, to which Ragan, Malone & Co. filed their exceptions, which were overruled, and the exemption allowed. An appeal was taken to this decision of the referee, and the District Judge has affirmed the decision of the homestead matters. Ragan, Malone & Co. then filed their intervening petition to recover certain goods found in the possession of the bankrupts, alleging that they were obtained by fraud; the identical statement herein involved being used as a basis for the claim of fraud. This intervening petition was denied by the referee, to which decision an appeal was entered to the District Judge, and the decision of the referee has also been sustained. Criminal proceedings have also been brought in the criminal court of the city of Atlanta against F. F. Preston, and charges are now pending against him there, and it appears on the very statement involved here. The bankrupts have filed their applications for discharge, and Ragan, Malone & Co. are found opposing their applications. While every legal advantage should be taken by the creditor to bring his guilty debtor to justice, the special master cannot refrain from expressing the opinion that this case has assumed more the attitude of an oppression than of a just prosecution. I therefore recommend that the objections filed by Ragan, Malone & Co. to the application of these bankrupts for their discharge should be overruled and dismissed.

The special master further reports that in and about this reference he has incurred an expense of $21 for stenographic services in reporting and transcribing the evidence and this report, and he prays that this amount may be allowed him, in addition to such allowance as may be made to him for his services in this reference, and that the amounts thereof be taxed by the court against the party cast in the suit.

Eason & Bull and Smith, Hammond & Smith, for objecting creditor.

Rogers & Heath, for bankrupts.

SPEER, District Judge. After hearing the arguments of counsel, and reading and considering the complete and learned report of Hon. Max Isaac, Special Master, and the exceptions thereto, and the record in the cause, it is, upon consideration, adjudged and decreed that the findings of the master are in all respects in accordance with the law, and his conclusions are affirmed, and his report is adopted as the opinion, conclusions, and judgment of the court.

It is further ordered, adjudged, and decreed that Max Isaac, Special Master, be and he is hereby allowed the sum of $50 for his services as special master in this reference, and the further sum of $21, costs incurred by him for stenographic services in said reference. Let said sums, together with all court costs occasioned because of said objections, be taxed by the clerk against the objecting creditors; i. e., Ragan, Malone & Co.