In re O'CALLAGHAN.

(District Court, D. Massachusetts. May 31, 1912.)

No. 17,346.

1. BANKRUPTCY (§ 384*)—COMPOSITION—FALSE STATEMENT—FRAUDULENT INTENT.

Fraudulent intent on the part of a bankrupt must be shown to sustain the charge of obtaining money on credit on materially false statements in writing, made to the lender for the purpose of obtaining such credit, urged as an objection to confirmation of a composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 590–592; Dec. Dig. § 384.*]

2. BANKRUPTCY (§ 384*)—COMPOSITION—DEFENSES—FALSE STATEMENTS.

Bankrupt's husband conducted her business as manager. In 1908 and 1910 he made false statements concerning the bankrupt's assets and liabilities to obtain money for the bankrupt on credit from a trust company. The bankruptcy petition was not filed until June 29, 1911. During the interval the notes taken by the trust company had been repeatedly renewed or paid, and there had been a succession of transactions involving the giving of credit by the trust company. Held, that the facts were insufficient to show that the trust company extended credit on the faith of the statement of 1910, and that the statement given in 1908 did not constitute a continuing representation, and was not one to which Bankr. Act June 25, 1910, c. 412, § 14b (3), 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1496), providing that a discharge shall not be granted where the bankrupt has obtained money on credit on materially false statements in writing, etc., applied, and hence the making of such statements was not a valid objection to confirmation of a composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 590–592; Dec. Dig. § 384.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Margaret G. O'Callaghan. On specifications of objection to confirmation of composition. Overruled.

Robert E. Harding, for objecting creditor.
William A. Knowlton, for bankrupt.

DODGE, District Judge. The referee has reported on February 21, 1912, that everything necessary under section 12b of the Bankruptcy Act had been done, and he recommends confirmation of the composition offered. The liabilities scheduled are $115,711.82, against assets amounting to $21,280.60. Claims amounting to $79,-897.84 have been allowed. The Exchange Trust Company of Boston, having a claim of $3,250, and two New York creditors, having claims of $500 each, are the only creditors who have appeared to object.

The referee has dealt with the specifications filed by the Exchange Trust Company as presenting, in substance, all the objections raised by either of these creditors, and it will be convenient here to follow the same course.

Specification 1 (a and b). These charge the concealment of certain jewelry or diamonds with intent to hinder, delay, and defraud

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

creditors. I agree, on the evidence, with the referee's finding of fact, and also agree with his conclusions of law relative to this charge.

Specification 1 (c). My conclusions are the same regarding this charge.

Specification 1 (d–g inclusive). These have not been insisted upon at the hearing.

Specifications 1 (h, i), and 2 (a). I agree with the referee that on the evidence the omission of the item $19,730.90 from the books until June 30, 1911, is not shown to have been with any intent to conceal assets belonging to the estate, or with any intent to conceal the bankrupt's true financial condition. To my mind the circumstances do not show with sufficient certainty to warrant the finding of such intent that the entry of this item on the bankrupt's books in addition to those of the Adams Company was necessary in order to make the bankrupt's books show her true financial condition.

Specification 2 (b) was not insisted on at the hearing.

[1] Specification 2 (c, d, e, f, g, and h) charge the obtaining of money on credit from the Exchange Trust Company upon materially false statements in writing made to that company for the purpose of obtaining credit from it on March 1, 1908, and July 1, 1910. There is no dispute that two statements in writing bearing the above dates were presented to the Trust Company by the bankrupt. They are Exhibits A and B, and may be referred to. They purport to be statements of the bankrupt's assets and liabilities as of those dates. The statements were in some respects incorrect. They overstated the assets and understated the liabilities, and they did so to an extent sufficient to be material. Fraudulent intent, however, on the bankrupt's part, must be shown in order to sustain this charge. Gilpin v. Merchants' Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023; Re Kyte (D. C.) 174 Fed. 867, 871. And, unless credit is shown to have been actually obtained by means of the untrue statement made with such fraudulent intent, no ground for refusal to confirm under section 14b (3) of the Bankruptcy Act has been established. Re Shaffer (D. C.) 169 Fed. 726.

Both the statements referred to were made up by the bookkeeper from the books of the concern, acting under the direction of J. J. O'Callaghan, who was the bankrupt's husband, and who managed the business carried on by her under the above name. It was he, and not the bankrupt, who presented the statements to the Trust Company, and there is no question that he did so for the purpose of obtaining credit, or that credit was afterward given by the company. The statement of 1908 was sworn to as true by him, and his affidavit, dated June 22, 1908, expressly recites the statement to have been made and sworn to for the purpose of obtaining credit and money. The statement of 1910 was signed by him, but not sworn to. His signature to both statements was in the following form: "O'Callaghan Cloak and Suit Co. by J. J. O'Callaghan, Mgr." According to the evidence, he relied on the bookkeeper of the concern to fill out both statements from the books, and there is evi-

dence from the bookkeeper that she, without intent on her part to deceive, was responsible for their inaccurate and misleading. character, also that O'Callaghan, though he swore to one statement, did not in fact know at the time that they were inaccurate or misleading or in what respects. But assuming O'Callaghan to be chargeable with knowledge that the statements were untrue, and with the intent to use untrue statements for the purpose of obtaining credit, there is nothing to charge the bankrupt with such knowledge or intent, except the fact that she permitted her husband to manage her business and represent her in dealing with the Trust Company; and on the authorities it is at least doubtful whether under such circumstances section 14b (3) applies to her. Re Hyman (D. C.) 97 Fed. 195; Re Meyers (D. C.) 105 Fed. 354; Hardie v. Swafford, 165 Fed. 591, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785, reversing the District Court in Re F. Hardie, 143 Fed. 609.

[2] Assuming, however, that such knowledge and intent on her husband's part would render section 14b (3) applicable to the bankrupt herself, and that credit to her was in fact obtained from the Trust Company in 1908 by means of the untrue statement dated March 1, 1908, the petition upon which she was adjudged bankrupt was not filed until June 29, 1911, and during the three intervening years the notes taken in 1908 by the Trust Company had been repeatedly renewed or in some cases paid. There had been a succession of transactions involving the giving of credit, and the evidence is hardly sufficient to show that anything due from the bankrupt to the Trust Company at or within four months prior to the bankruptcy had been obtained on the strength of the credit given in 1908. The statement of that year cannot be regarded as a continuing representation, and I must hesitate to hold that section 14b (3) applies, without limit of time, to any obtaining of credit, however long before the bankruptcy, and irrespective of intervening transactions with the creditor. See Re Terens (D. C.) 172 Fed. 938; Re Cotton and Preston (D. C.) 183 Fed. 181.

As to credit given after the statement dated July 1, 1910, I am unable to regard the evidence as sufficient to prove that such credit was given in reliance upon that statement. A fair conclusion from the evidence seems to me to be that what the Trust Company then lent was lent with the knowledge that the bankrupt was in difficulties, that an investigation of her affairs would be necessary to justify further credit in any large amount, and with the intent to advance her only so much as would postpone immediate collapse before such investigation could be had.

I agree with the referee in regarding the evidence as insufficient to prove the bankrupt guilty of any of the acts or of failure to perform any of the duties such as would bar her discharge. I further agree with him that the composition offered will be for the best interests of the creditors.

The offer of composition is therefore confirmed.