Hills Savings Bank, Appellant, v. C. I. Cress, Appellee.

February 14, 1928.

*Wilson & Evans*, for appellant.

*Byington & Rate*, for appellee.

ALBERT, J.—On the 28th day of August, 1923, defendant, C. I. Cress, appeared at plaintiff bank and verbally applied for a line of credit. Prior to this time he had not been a patron of plaintiff bank. He was required to furnish a detailed financial statement of his assets and liabilities, as a basis for determination as to whether said bank should or should not extend the credit desired. A printed form was used, and John L. Krall, cashier of plaintiff bank, inquired as to various matters set out in the statement, and on the answers made by Cress, filled out the written statement which Cress signed. The statement is in the following form:

"STATEMENT OF C. I. CRESS

"Address: Riverside, Iowa.
"To: Hills Savings Bank,
"Address: Hills, Iowa.
"For the purpose of procuring credit, from time to time with the above bank or person for my negotiable paper, I furnish the following a fair and accurate statement of my financial standing on the 28th day of August, 1923.

"ASSETS

"Real Estate Owned
"Real Estate Owned, 259 Acres...................$51,800.00
"Personal Property
"10 horses ...................................... 1,000.00
"40 cattle ...................................... 3,000.00
"140 pigs, 40 hogs, 23 sows...................... 1,600.00
"Machinery, Cash and Sundries.................... 1,000.00

Total        $58,400.00

"LIABILITIES

"Incumbrance on Real Estate
"Chicago Joint Stock Land Bank.................. 26,000.00

"Incumbrance on Personal Property

"Owing your bank.............................. 3,000.00
"Owing other banks
"All other debts
  "S. Merry ......................$3,000.00
  "Hahn ......................... 1,000.00    4,000.00
"Net Worth ................................ 25,400.00

                          Total     $58,400.00

"Insurance on property.     Yes
"Life Insurance carried                    $2,000.00
"To whom,            Wife
  "Subscribed and sworn to this 28th day of August, 1923.
                        "[Signed] C. I. Cress."

On the strength of this financial statement, on September 25, 1923, the bank loaned the defendant $2,300, and again on February 23, 1924, a further sum of $1,000. The $2,300 loan was later renewed.

It is alleged that the false and fraudulent representation made by the defendant consisted of a misstatement of the incumbrance on the real estate, which is designated in the liabilities as a $26,000 incumbrance held by the Chicago Joint Stock Land Bank, when in fact said bank held no mortgage thereon. There was, however, a $25,000 mortgage (with some three years' interest) on the land, held by the estate of defendant's father. It is further claimed that said statement is fraudulent and false in that, under the heading "all other debts," there are but two claims stated, one of Merry, for $3,000, and one of Hahn, for $1,000; whereas, in truth and in fact, aside from the debts scheduled, the defendant was owing various other creditors in addition to those listed, in the sum of about $27,000, which, under the evidence, is shown to consist of numerous items of actual indebtedness of the defendant, amounting to about $13,000, and also indebtedness on which he was security in about the same amount. The petition, in addition, contained the other ordinary allegations necessary in an action of this kind.

Defendant in answer admits that the loans were made by the plaintiff as alleged in its petition, but denies any fraud and deceit. It is also pleaded by defendant that since the above

transaction he was discharged in Federal bankruptcy court, and that the indebtedness represented as owed to the plaintiff bank was scheduled and allowed therein. The question of the fact of discharge in bankruptcy is of no moment in this case, because, if the plaintiff has sustained its petition, and recovers for the damages for false and fraudulent pretenses alleged, under Section 17 of the Bankruptcy Act, as amended by the Act of Congress of February 3, 1903, defendant is not released by his discharge in bankruptcy. On the other hand, if the plaintiff fails to make a case, or fails to obtain a verdict in its favor, it is an adjudication that it has no cause of action on the facts stated, and the defendant needs not, therefore, a discharge in bankruptcy to protect himself from this action.

Turning now to the motion for a directed verdict, we find that the first and second grounds thereof are identical in substance, except that the first refers to the $2,300 and the second  to the $1,000 note. The basis of these grounds is, in effect, that the lapse of time between the making of this financial statement and the loans was too long, and that it should be held, as a matter of law, that the representations made, together with the financial statement, could not be the basis for a charge of false pretense. As supporting this doctrine we are cited to *Gregory v. Pierce*, 186 Iowa 151; *In re Cotton & Preston*, 183 Fed. 181; *In re O'Callaghan*, 199 Fed. 662; 1 Collier on Bankruptcy (12th Ed.) 388–392; Brandenburg on Bankruptcy (4th Ed.) 1089, Section 1495.

It will be noted that the financial statement was made August 28, 1923, and the first note was dated September 25, 1923, and the $1,000 note October 23, 1924. We have no disposition whatever to quarrel with the rule cited, but it has no application to the facts in the instant case, because the financial statement itself contemplates loans to be made in the future. Its opening statement is:

"For the purpose of procuring credit, from time to time with the above bank or person for my negotiable paper," etc. Even though the general rule be as defendant states, it is quite apparent that it could have no application to the instant case, because of the particular facts recited in the financial statement. At most, this was a question for the jury.

The third ground of the motion is not quite clear to us. It gives as the reason for the motion:

"There has been no proof or pleading with reference to any of the provisions of the Federal Bankruptcy Act offered in evidence in this case."

The fifth ground is, in substance, that the evidence of plaintiff conclusively shows that the defendant was discharged in bankruptcy proceedings, and that all the claims of the plaintiff bank were scheduled and filed, and the records  show that said indebtedness has all been barred by discharge in bankruptcy. To this there are several answers. We are unable to find in the record evidence of such discharge in the bankruptcy court, and the allegation of the defendant in answer that such discharge actually occurred, is denied by the reply of the plaintiff. But if we assume that such discharge had been evidenced in this case, the allegations of the plaintiff's petition show that it would not be effectual to discharge the defendant from the claims herein made, because the Federal statute specifically excepts the very kind of claim that is sued upon herein. That courts will take judicial notice of the contents of the statutes governing Federal bankruptcy has been decided by this court, as well as others. *Coughran v. Gilman*, 81 Iowa 442; *Owens v. National Hatchet Co.*, 147 Iowa 393. This question is elaborately annotated in 23 Corpus Juris 128, Section 1947, showing that this is the uniform rule recognized by all state courts.

As heretofore suggested, neither of the reasons set out in grounds Nos. 3 and 5 is material to either of the parties hereto.

The only remaining ground of said motion is No. 4, which reads as follows:

"For the further reason that there has been no sufficient showing by the plaintiff of any misrepresentations or statements which amount in law to fraud, and as a matter of law plaintiff has failed to make out a case of fraud and false representations."

The sum total of this ground of the motion is that there was not sufficient evidence to take the case to the jury. The evidence shows that there was no incumbrance on the real estate of

 $26,000 to the Joint Stock Land Bank, such as represented in the financial statement, but there was a mortgage of $25,000, with interest approximating $3,000, on this land, held by the W. H. Cress estate. It is insisted by the defendant that this difference in name was wholly immaterial. We cannot so hold, as a matter of law. It is a well known fact that financial companies rarely loan more than 40 per cent, and never to exceed 50 per cent, of the actual value of the property; and if this bank had such fact in mind, and, knowing nothing about the land or its value, had relied upon this statement, it might have been misled thereby. In other words, there might be such a condition existing that the misrepresentation of the name of the incumbrance holder might become material in determining what should be considered a false pretense; and we cannot hold, as a matter of law, under the facts in this case, that it was not such a false pretense. The authorities quite generally hold that any representations which would naturally influence or induce a bank to make a loan to its damage may be material. 26 Corpus Juris 1104, Note 98.

The evidence, taken most favorably to the defendant, is that, when the application was made to the bank for a line of credit, a printed form was used, and the cashier of the bank filled out the same, after Cress told him, in answer to various questions, what his assets and liabilities were. Among others, it seems that he was requested, after having stated the real estate and the incumbrance and the debts he was owing to the bank with which he had previously been doing business, to give "all other debts." In response to this question he gave: "S. Merry, $3,000; Hahn, $1,000."

We have studied this record with care, and find that the jury could have found that the evidence in the case shows that this statement was false in this respect, because, at the time this statement was made, there was, in addition to the items set out in the statement, something over $12,000 of personal indebtedness then owed by Cress, to say nothing of something over $13,000 paper outstanding upon which he was liable as security. If we assume that the security indebtedness for which he was liable should not be taken into consideration in determining this question, the large amount of his additional personal indebted-

ness shown to have existed is sufficient to still show the falsity of his financial statement with respect to his indebtedness. The evidence was abundant to take this question to the jury. Were the amount small or inconsequential, as compared with the general worth of the estate, it might be looked upon as an unintentional failure to properly state his assets, and not material; but we cannot hold, as a matter of law, that it was so in this case.

The next contention made by defendant is that an intention to deceive and defraud is an essential element in a charge of this kind. No one will dispute this question of law, and it is  too well settled to require reference to the authorities; equally so the rule that the intention must be an actual one. It is urged, however, that there is no evidence whatever in the record to show that there was an actual intent to defraud and deceive. With this we cannot agree. Primarily on the question of intent to defraud and deceive, direct evidence is rarely attainable. Such conclusion must be drawn from the surrounding facts and circumstances in the case; and especially in a case of this kind, where one is called upon to tell things which he knows of his own knowledge, and he does so, the jury may be warranted in finding, under such condition and the surrounding facts and circumstances, that the statements made by him are knowingly falsely made, and with intent to defraud and deceive. In the case of *Boysen v. Petersen*, 203 Iowa 1073, this court said:

"It is a well established doctrine that *scienter* may be proved by showing (1) actual knowledge of the false representation; (2) that the representation was made as of the knowledge of the party making it, or in such unqualified and positive terms as to create the implication that he had actual knowledge of the fact stated; or (3) that the special situation or means of knowledge of the representor were such as to make it his duty to know as to the truth or falsity of the representation."

We there discussed our former line of holdings, and we need pursue this question no further.

The facts in evidence in this case would suggest that the jury might have found that, when these representations were made, they were material; that they were false and fraudulent, and made with an actual intent to deceive and defraud; that the same were untrue; and that the bank believed, acted, and relied

upon them to its prejudice,—and this was sufficient to take the case to the jury.

One other question is discussed, and that is that it appears that, when the $2,300 note became due, a renewal note was taken  therefor. We deem this wholly immaterial, because the damage, if any, caused to the plaintiff herein had all accrued long' prior thereto,—to wit, at the time the first $2,300 note was given.

In view of a possible retrial of this case, we ought to say something about the collateral indebtedness heretofore referred to. We cannot hold, as a matter of law, that such collateral indebtedness could be made the basis of an action of this character, but we do hold that the same could be taken into consideration by the jury, together with all of the surrounding facts and circumstances shown in this case, in determining the intent of the defendant.

The court should not have taken this case from the jury.— *Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.