E. J. LIVINGSTONE, Appellant, v. FRANK V. DOLE, Appellee.

**APPEAL AND ERROR:** Harmless Error—Question Excluded and
1  Answer Retained. Sustaining objections to a question after answer has been given is harmless to the one propounding the question, when the answer was allowed to remain in the record.

**EVIDENCE:** Opinion Evidence—Speed. Competency to estimate
2  speed is a condition precedent to giving one's judgment as to speed; and a question whether an object was moving "as fast as a man running," is not allowable, because presenting no standard of comparison.

**EVIDENCE:** Relevancy, Competency, and Materiality—Insurance as
3, 10 Bearing on Negligence. Whether one who is sued for damages resulting from his negligence did or did not carry insurance against such occurrences is wholly immaterial.

**EVIDENCE:** Opinion Evidence—Examination of Experts. Error
4  may not be predicated on the fact that a witness gave expert

testimony without first qualifying, when he later qualified, and gave the same testimony.

EVIDENCE: Opinion Evidence — Weather Conditions. Whether weather conditions were the same on two different occasions is a question of *fact*, and not of *opinion*.

EVIDENCE: Opinion Evidence—Competency of Experts. An incompetent. opinion may be rendered harmless by a later detail by the witness of his sources of knowledge, and by an explanation which definitely reveals what he meant by the opinion in question.

NEGLIGENCE: Instructions—Crossing Street at Points between Public Crossings. Proper for the court to explain to a jury the relative degree of care exacted of a pedestrian in crossing a public street, (a) at a public crossing provided specially for pedestrians, and (b) at points not so specially provided.

NEGLIGENCE: Instructions—Concurrent and Contributory Negligence. Incidental reference, in instructions, to *concurrent* negligence, in connection with correct instructions on contributory negligence, is harmless error.

TRIAL: Instructions—Form, Requisites, and Sufficiency—Repetitions. Repetitions in instructions, of a correct statement of law, do not constitute error.

EVIDENCE: Relevancy, Competency, and Materiality—Insurance as Bearing on Negligence.

NEGLIGENCE: Acts Constituting—Evidence. Evidence reviewed, and held insufficient to show negligence in the operation of an automobile on a much frequented street, at a speed *less* than that prohibited by ordinance.

NEGLIGENCE: Contributory Negligence—Crossing Streets. Looking up and down a street, before attempting to cross at points other than usual crossing places, cannot be said, as a matter of law, to satisfy the lawful demands for care.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MAY 17, 1918.

REHEARING DENIED DECEMBER 14, 1918.

ACTION for damages resulted in judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*Jas. A. Merritt* and *Clark, Byers & Hutchinson* for appellant.

*Coffin & Rippey,* for appellee.

LADD, J.—Shortly after 8 o'clock, in the morning of September 8, 1914, plaintiff started to cross Walnut Street in Des Moines, from the north side, near the alley between Sixth Avenue and Seventh Street. She testified to having looked up and down the street, before leaving the sidewalk, and that, seeing no vehicle approaching, she took two or three steps out in the street to the south, and was struck by defendant's automobile, and seriously injured.

The negligence charged is that defendant (1) was operating his automobile at a dangerous speed, (2) was running in excess of the rate fixed by ordinance, and (3) did not bring his car to a stop, before colliding with plaintiff. The evidence was not such as to warrant the submission of the last ground, and the court did not submit the first. One witness estimated that the automobile was moving at a speed of 25 miles an hour, while two others were of opinion that its speed was less than 10 miles an hour. The witness riding with defendant testified that, as the car neared where plaintiff was standing, she took a quick step off the curb; that he shouted at her, but that she continued, until she was struck by the car: and defendant swore that he heard the shout, and saw her as she struck the car. An ordinance of the city, limiting the speed of cars in this section of the city to 12 miles an hour, was introduced in evidence; and much testimony bearing on plaintiff's condition was received. Twenty errors are assigned, but only those on which brief points are made, need be considered.

I. One Jones testified that he was polishing the brass of the store front east of the alley spoken of, "heard the

automobile whizzing by me, and looked and saw the car
going west. * * * looked back at my
work, * * *' and in a very short time
I heard a scream, and saw the plaintiff
whirling in the air. * * * Q. Was it
going fast or slow? A. Going pretty fast."

1. APPEAL AND ERROR: harmless error: question excluded and answer retained.

An objection was then interposed and sustained, but there
was no motion to strike the answer. As the answer remained in the record, appellant was not harmed by the ruling, and it is not subject to review at her instance. Later
on, the witness was asked to give his "best
judgment as to how fast the car was moving." An objection that he had not shown
himself competent to estimate the speed of
the car was rightly sustained. For all that appears in the
record, he may have been utterly unable to estimate its
speed.

2. EVIDENCE: opinion evidence: speed.

Again, he was asked, "Was the car going as fast as a
man running?" An objection as immaterial, irrelevant, and
incompetent, was sustained. There is no standard of running speed for a man. One may denominate "running" as
little, if any, faster than a person ordinarily walks; while
others may refer thereby to the high speed of the trained
athlete. The gait contemplated by the question was not disclosed, and an answer thereto such as called for, would have
thrown no light on the issue as to the speed of the automobile. There was no error.

II.   The plaintiff related that defendant called, after
she was carried to her office, and left his card, and urged
her to go to the hospital, and said he "had insurance on
his auto that would pay all the expenses."
This was stricken on motion, as immaterial.
Manifestly, it had no bearing on the issues,
and the ruling was correct.

3. EVIDENCE: relevancy, competency, and materiality: insurance as bearing on negligence.

III.   The defendant had operated an
automobile two years, and, in answer to in-

quiries, said, in substance, that he did not believe anyone could tell the speed of a car without looking at the speedometer; but, over an objection to his competency, expressed the opinion that the car was going less than 12 miles an hour. Following this, he explained that he had observed the speedometer, to see if the car was moving within 12 miles an hour, and in that district, watched rather closely, and could, in operating it, say whether the speed exceeded that limit. He was then asked if his car was moving at a greater speed than 12 miles an hour, and, over a like objection, answered, "I would say that my car was traveling at less than 10 miles an hour." Conceding that the witness was not qualified when the first answer was given, after qualifying he made like answer, and there was no prejudice in the first ruling. The last objection was rightly overruled.

4. EVIDENCE: opinion evidence: examination of experts.

After the witness had testified to four pictures showing him in his car near the scene of the collision, he was asked whether the weather conditions existing at the time these were taken were identical with those at the time of the collision; and, over objection as incompetent and immaterial, and not the subject of expert testimony, responded, "As I remember it, they were very similar." The question called for a fact, not expert evidence; and, if he knew, there was no occasion for the examination of weather reports. There was no error.

5. EVIDENCE: opinion evidence: weather conditions.

IV. One Wood, who was riding with defendant, disclaimed ability to estimate how fast an automobile is moving; but, in answer to a question as to whether it was moving faster immediately preceding the collision than at the intersection of Walnut Street and Sixth Avenue, said, "No, sir, it had been coming along slowly." In overruling a motion to strike this answer as in-

6. EVIDENCE: opinion evidence: competency of experts.

consistent with a former ruling, the court allowed it to stand, on the theory that "it may be connected up on the question of speed;" and the witness went on:

"When we were crossing the intersection of Sixth and Walnut Streets, the car was going between 6 and 7 miles per hour, by observing the speedometer. I don't know how the car slowed up. I didn't notice whether he applied the brakes or not, as we approached the intersection of Sixth Street. I looked down to the speedometer, when he slowed up there, and it was running between 6 and 7 miles an hour—that was when he slowed up.  *  *  *  I didn't observe the driver apply the brakes, or reduce the speed of the machine."

This sufficiently defined what the witness meant by "slowly," and that he spoke from observing the speedometer, rather than from his own judgment in the matter. The ruling ought not to be denounced as erroneous.

V.  The court instructed the jury, in the eighth paragraph of its charge, that:

"A person has the right to cross a public street or highway at a point other than the one pro- 7. NEGLIGENCE: instructions: crossing street at points between public crossings. vided for pedestrians; but such person, in attempting to cross a public street or highway at a point other than the one provided for pedestrians, is required to use greater care than when such person crosses at a point provided for pedestrians. This constitutes, and is, ordinary care, as herein defined; but you are instructed that ordinary care is a relative term, and always has reference to the circumstances of the case."

This was followed by an accurate definition of ordinary care. The excerpt from the instruction is criticised in two respects: for that it is not an accurate statement of the law; and that there was no evidence upon which to base it.

The rule as stated, though differently expressed, is in

harmony with what was said in *Wine v. Jones,* 183 Iowa 1166. That greater care should be observed by a pedestrian in crossing a street at other than at the street intersections is generally recognized, for the danger usually is greater. People ordinarily cross streets at the intersections, and drivers of vehicles are on the lookout for them there. As they do not usually cross over between the intersections, the lookout, quite naturally, is somewhat relaxed; and for this reason, greater danger is involved in passing over at such localities, and corresponding increase of care is exacted. The instruction did no more than tell the jury this, and was not erroneous.

A portion of the instruction is criticised for that plaintiff's negligence, in order to defeat recovery, must have contributed proximately to the injury, and if it did so, she could not recover "because neither the court

8. NEGLIGENCE: instructions: concurrent and contributory negligence.

nor the jury is presumed to apportion the damages which arise from concurrent negligence, if any, or say which party was the more to blame." To defeat recovery, plaintiff's negligence must have, in some degree, contributed to the injury, and this allusion to concurrent negligence could not have been prejudicial. In another portion of the instruction, the jury was told that "a person crossing a public street of the city is required to make reasonable use of all his senses, in order to observe an impending danger; and if he fails so to do, and is injured by reason of such failure, he is guilty of such negligence as will prevent any recovery for the injury sustained. Reasonable use of the senses means such use as an ordinarily prudent and careful person would have used under the circumstances."

The criticism is that it did not more specifically instruct as to the relative duties of the parties. The instruction, in so far as it went, was correct, and it was not open to defendant to dictate how much should be included in a

single paragraph. That reasonable use of the senses by persons is exacted, whether traveling on the streets as pedestrians or in vehicles, is elementary, and the instruction in that respect is not open to just criticism.

VI. The court directed the jury, in the tenth instruction, that, if defendant was driving his automobile, at the time of the collision, at a speed exceeding 12 miles an hour, and this excessive speed was the cause of the collision, he was negligent, and, after directing what should be considered in determining the speed rate, added that, if the plaintiff were found guilty, of contributory negligence, it was immaterial what the speed of the car was; as, in that event, no recovery could be had.

9. TRIAL: instructions: form, requisites, and sufficiency: repetitions.

It is said that this put undue emphasis on the issue as to plaintiff's negligence. The last clause might well have been omitted, as the law applicable to that subject had been covered by previous instructions. The mere repetition of a rule cannot well be denounced as constituting error. Otherwise, the entire instruction must be regarded as erroneous; for the portion other than that criticised is little else than a repetition of the ninth instruction. There was no error at this point.

VII. The plaintiff requested the court to instruct that, if the defendant "was carrying liability insurance against accident, while operating his automobile at the time of the injury complained of, such fact may be considered by you in determining the question of defendant's negligence, if for no other purpose." This was rightly refused, for that the fact of such insurance had not the slightest bearing upon what the defendant did or omitted to do, at the time of and previous to the collision.

10. EVIDENCE: relevancy, competency, and materiality: insurance as bearing on negligence.

VIII. Counsel excepted to the instructions as a whole,

in that they did not submit the issue as to whether defendant was negligent in the operation of the automobile, even though its speed had not exceeded the limit defined by the ordinance, and also for that, as is contended, the jury should have been told that, "if plaintiff looked, before stepping up the street, and saw no automobile approaching, that then she would have the right to proceed across the street, and would not be guilty of negligence if she failed to look afterwards, unless, under the evidence, there was some reason why she should look, other than the fact that the automobile was approaching." The only issue as to defendant's negligence submitted was whether the automobile was being driven, at the time of the collision, faster than 12 miles an hour; and the court told the jury that, if it was, defendant was negligent.

11. Negligence: acts constituting evidence.

Whether this was correct, in view of Section 1571-m20, Code Supplement, 1913, providing that cities may limit the speed, and that "the maintenance of a greater rate of speed for one eighth of a mile shall be presumptive evidence of driving at a rate which is not careful," need not be considered; for, in any event, the instruction as given was the law of the case, and favorable to appellant. The fact that cities limit the speed does not render any rate less than that defined, careful.

"Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the property of another, or the life or limb of any person; provided, that a rate of speed in excess of twenty-five miles an hour shall be presumptive evidence of driving at a rate of speed which is not careful and prudent in case of injury to the person or property of another." Section 1571-m19, Code Supplement, 1913.

"Upon approaching a pedestrian who is upon the trav-

eled part of any highway and not upon a sidewalk,   *   *   *
every person operating a motor vehicle shall slow down and
give a timely signal with his bell or horn or other device for
signaling." Section 1571-m18, Code Supplement, 1913.

The negligence charged and not submitted was not
that of failing to give warning, or of omitting to slow down,
other than as this is involved in that of having moved at an
excessive speed at the time of the collision. Nor was there
evidence of such excessive speed, though less than 12 miles
per hour.

Dr. Turner testified that he saw plaintiff "just after she
had stepped off of the curbing on the pavement, going south.
When I first saw her, she was about two steps from the
pavement. Defendant's car was about 10 feet from her.
Saw the car strike her,—it was the front end of the car."
He testified to being able to estimate how fast a car moves,
and that this one was going at a speed of 25 miles an hour.
The witnesses agree that the street was clear of vehicles,
except a street car. Dole testified that, as his automobile
passed the intersection of Sixth Avenue and Walnut Street,
he slowed up, as a street-car ahead stopped to let a few
passengers alight, and that he "followed along slowly be-
hind the street car. I would not say how fast, but I could
not have gone very fast, because the car does not pick up
much speed there." He was then asked to relate what hap-
pened after leaving the intersection, and answered:

"Well, I drove up Walnut Street on the north side of
the street, and I was looking ahead, naturally, on account
of the car being ahead. I was watching what was ahead of
me; and I don't remember anything particular that hap-
pened, except that I was watching that car and whatever
else might be ahead of my car; and the only thing I re-
member outside of that happened was when I heard some-
one shout. I would not be able to say who it was, whether
the lady or Mr. Wood that shouted; and at that instant,

I just happened to glance at the side, and there was a lady just stepping against the car. Q. What did you do then? A. I pulled up ahead a little ways by the curb, got out, and went back; helped take the lady in the shoe store. Q. You didn't see the plaintiff in this case, or that lady that walked into your car at that time, before she walked into the side of the car? A. No, the only time I saw her was just as she was striking the car. Of course, I saw her ·s she was falling; but I just saw her as she was striking the car,—that was the first sight I got of her. Q. Did you blow a horn at any time? A. No, there was not any occasion to blow a horn,—wasn't anything to blow a horn for."

Woods, who was riding with Dole, said that:

"When we got near the intersection of Walnut and the alley, I saw this lady standing on the curbing, and my eyes followed her, as we came along there, not through any other than out of curiosity; and just as we got very nearly to her, she took a quick step off of the curbing, and her face was turned toward the west; and quicker that I can tell it, she struck the side of the car; and I reached for her to grab her, but it was an impossibility for me to do it; and, as soon as she ran into the side of the car, I got right out of the automobile, and went right back to her."

His testimony as to the speed of the car, and of shouting to her, need not be repeated. This is all the evidence bearing on the issue as to whether defendant might have been negligent in operating his car at a speed less than 12 miles an hour. We are of opinion that the evidence was not such as that it was error not to submit that issue to the jury. Necessarily, what speed will be adjudged negligent, depends on the local surroundings, the use being made of the street, and the like. Here, it was clear of vehicles other than the street car, for the time being; and, though one of the principal thoroughfares of the city, it could not well be said from the evidence that a rate at which this auto-

mobile was moving, if less than 12 miles an hour, was negligent. Nor are we ready to say that the jury should have been advised, as appellant contends, with reference to the care to have been observed by plaintiff. Looking up and down the main traveled streets, before attempting to cross at a point other than at the usual place, cannot be said, as a matter of law, to suffice as the measure of care exacted.

12. NEGLIGENCE: contributory negligence: crossing streets.

While the driver of vehicles is required to keep a lookout at all times at such localities, pedestrians are not exempted from making reasonable use of their senses in passing over. Each has an equal right to the use of the streets.

"One has no rights superior to the other, save as declared by statute or ordinance, and each is obliged to act with due regard to the movements of others entitled to be on the street. Neither is called upon to anticipate negligence on the part of the other. It is no more the duty of the driver of vehicles to continually look out for pedestrians that of the latter to look out for vehicles. No pedestrian has a right to pass over a public throughfare without regard to approaching vehicles, nor has any vehicle driver a right to appropriate the public street without regard to its use by pedestrians." *Rolfs v. Mullins*, 179 Iowa 1223.

The court, then, did not err in failing to instruct as suggested.

The instructions as a whole are said not fairly to submit the issues, and especially not to have fairly presented plaintiff's theory of the case. We do not see but that it was as fairly presented as that of defendant. The charge is open to the criticism of being somewhat abstract, in dealing with the legal questions involved. The court might well have explained the relative rights of the parties to the use of the street, and have more specifically applied the law to the facts as proven. But neither party requested that this

be done; and, as the law bearing on the issues to be passed on was accurately stated, there was no error.

The judgment is—*Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.