CHARLES GREGORY, SR., Appellee, v. HARRY F. PIERCE, Appellant.

**FRAUDULENT CONVEYANCES:** ' Family Relations—Conveyance to
1  Debtor's Father—Presumptions. A presumption of a fraudulent conveyance is not raised from the fact that a debtor sold his interest in a store to his father, although the evidence fails to show whether or not any consideration was paid.

**APPEAL AND ERROR:** Review—Discretion of Court—Motions for
2  New Trial. While the Supreme Court seldom interferes with rulings granting a new trial, still, if the ruling of the court in directing a verdict was right, then the motion to grant a new trial was improperly sustained, and the Supreme Court should so say.

**BANKRUPTCY:** Discharge of Bankrupt—Non-Provable Debts—
3  Fraud. Where a bankrupt, prior to being adjudged a bankrupt, and at the time he executed a note to a payee, truthfully represented that he owned an interest in a store, the representation was not a *continuing* one, and his act in selling his interest in the store about a month thereafter did not amount to fraud, under Sec. 17, Bankruptcy Act, barring a bankrupt's discharge from debts contracted by fraud.

*Appeal from Pottawattamie District Court.*—THOS. AR-
THUR, Judge.

## MAY 15, 1919.

ACTION at law to recover on a promissory note. The
petition was in two counts. At the close of the testimony,
the court sustained defendant's motion for a directed ver-
dict as to the first count, and submitted to the jury the is-
sues raised by the second count. There was a disagreement
of the jury as to this. Plaintiff's motion for a new trial as
to the first count was sustained, and defendant appeals.—
*Reversed.*

*Mayne & Green,* for appellant.

*Tinley, Mitchell, Pryor & Ross,* for appellee.

PRESTON, J.—The second count of the petition sought to
recover because of a promise by defendant, subsequent to
his discharge in bankruptcy. It is conceded by both sides
that this appeal does not involve any matter in regard to
the second count, because, the jury having disagreed, that
count is left for retrial.

Going now to the first count: The note in suit is for
$2,500, executed November 27, 1907, and signed by defend-
ant, Harry F. Pierce, and by William Barker. In consid-
eration of said note, plaintiff conveyed to Barker 80 acres
of land, then owned by plaintiff. By the first count of the
petition, plaintiff claims, substantially, that, at the time of
such conveyance, defendant, Pierce, represented to plaintiff
that he, defendant, was the owner of a one-half interest in
the retail shoe business carried on in the city of Council
Bluffs under the firm name of W. A. Pierce; that plaintiff,
relying upon said statements, conveyed the land and ac-
cepted a note; that defendant was not the owner of a one-
half interest in said business; that, after the execution of

said note, said defendant was adjudged a bankrupt, which fact he now asserts as a bar to plaintiff's recovery, but plaintiff says that, under Paragraph 4 of Subdivision B (2), of Section 17 (30 St. at L. 550, U. S. Comp. St., Sec. 9601), said debt is not discharged, because of the fraud of defendant; that said section is to the effect that, where a bankrupt has committed fraud, consisting of obtaining property by false pretenses or false representations, his discharge is barred.

By amendment, plaintiff says that the defendant made the statement to induce plaintiff to accept the note; that the plaintiff relied upon such statement until after the delivery of the deed; that said representations were false and not true, at the time plaintiff parted with his land by the delivery of the deed to Barker, and at the time plaintiff received the note; that he was not advised by Pierce that the latter had disposed of his interest in the shoe store.

The answer denies all allegations not admitted. Defendant admits the execution of the note, and his discharge in bankruptcy, and says, further, that he filed his petition in bankruptcy on November 11, 1908, and on that date was adjudged a bankrupt; that he turned over to the trustee in bankruptcy all his property, for the benefit of his creditors, and that, on April 2, 1909, he was duly discharged as a bankrupt, and that thereby he was discharged from all his provable debts, including the claim of this plaintiff, and that he was thereby released and discharged from all liability to plaintiff on the claim sued on.

The facts as to the bankruptcy proceedings, and the dates thereof, were stipulated to be as alleged. The evidence shows that the note was executed and delivered at about the time of its date, and that the land was conveyed at about that date. Defendant sold his interest in the shoe

store to his father about a month thereafter,
or about Christmas, 1907. Appellee argues
that, because the evidence does not show
that defendant was paid therefor by his fa-
ther, it was not a good-faith transaction. It
should be presumed, perhaps, that he was
paid therefor. At any rate, it will not be presumed that it
was not paid for. Fraud will not be presumed. If defend-
ant sold his interest in the store for value, he would have
as much money after the sale, unless it was disposed of in
still some other way.

*1. Fraudulent conveyances: family relations: conveyance to debtor's father: presumptions.*

The defendant, Pierce, was called as a witness for
plaintiff, and testified that, in 1907, he was paralyzed, and
not doing any business; that the store of Pierce & Com-
pany carried a stock of from $50,000 to $100,000; that this
had been true in previous years, and he supposed it was
true in 1907, though he had been out of the store and not
doing business in 1907; that the business was a partner-
ship; that he sold his half interest in the store about
Christmas, after the signing of the note; that it was right
in there about that time.

Plaintiff as a witness testified:

"I reside in Council Bluffs, and have for 46 years;
have known defendant and Barker 20 years. I conveyed
the land in November, 1907. Barker first spoke to me
about buying the land; Barker and Pierce came to me to-
gether, about buying the land, in November, 1907. Pierce
came into my shop with Barker, and said: 'Gregory, I can't
handle this land to very good advantage with a mortgage
on it. I own a half interest in the store, and Barker and
I ought to be good.' After he said that, I said, 'It's all
right, and we will take the note.' I had been in the store,
and knew there was a large stock. I relied on what Pierce
told me, and would not have accepted the note if he had not
said he owned a half interest of that store. I accepted

the note and conveyed the land upon the strength of what he said about owning that store. On the same day, I talked with Barker before he and Pierce came in together, and he talked about wanting to buy it, and we had talked about the price. It was low land. The note was delivered at Hart's bank. They left the note at the bank,—made the papers in Hart's bank. The deed was made out to and delivered to Barker. I don't think Pierce knew when the deed was delivered. Pierce and Barker only came in the shop to see me just once. They were only in the shop just a few minutes. It didn't take long to do all the business,— possibly as many words exchanged as I told you. Pierce did the talking. Barker did own some property here, too. I possibly knew as little about his financial condition as I did about Pierce's. Barker and I were good friends. Had not asked Barker anything about his financial condition, or what he had that day; had not asked Pierce anything about the condition of the business, and did not ask him anything about what other property he had, and whether it was incumbered or not. There was not a thing said in the talk, except the conversation to the effect that Pierce said he owned a half interest in that stock of goods, and that he and Barker ought to be good. That is all that was said about the financial condition of either of them, and that was all Pierce told me about his financial condition."

A son of plaintiff's says he remembers a little about the conversation; that Pierce said he owned a half interest in the store, describing it, and that he and Barker ought to be good for it, without a mortgage. Locke says that, after defendant told plaintiff he owned a half interest in the shoe business, plaintiff said, "Well, you ought to be good for it, I believe I'll let you have it." Defendant testified for himself, and denied the conversation in plaintiff's shop, related by plaintiff and his son and Locke, and says he had no interest whatever in the 80 acres of land for which the

note was given; that he worked in the store in 1906, and again commenced working there in 1908.

At the close of plaintiff's testimony, defendant moved the court to take from the jury all matters involved under Count 1 of the petition, and to instruct the jury to render a verdict in favor of the defendant as to that count, for the reasons that there is no evidence tending to show that the land was obtained by misrepresentation or false pretense, or that the note was a debt within the exception of Section 17 of the Bankruptcy Act; and second, that there is no showing as to the falsity of any alleged representation made by the defendant. The ruling on the motion was reserved; and, at the close of all the evidence, the motion was sustained. The court sustained the motion because it appeared from the testimony that the defendant was, in fact, the owner of a half interest in the store, at the time of the execution of the note and conveyance of the land, and because the record does not show any fraud in the sale of his half interest in the store to his father, and because, in the absence of a showing of any fraud or concealment of the consideration that he received for his interest in the store, the representation by defendant would not be a continuous fraudulent representation. Plaintiff filed his motion for a new trial as to Count 1, and the reasons given therefor are that the jury failed to agree as to Count 2; and that the court was in error in withdrawing from the jury the question involved in Count 1; that, under the evidence and the law, plaintiff had a right to have Count 1 submitted to the jury, and the court erred in sustaining the motion of defendant to withdraw that count from the jury. Plaintiff, therefore, asked that the order of the court sustaining the motion of the defendant for a verdict as to Count 1 be set aside, and that plaintiff have a new trial upon the matters contained in

2. APPEAL AND ERROR: review: discretion of court: motions for new trial.

Count 1.  This motion for new trial was sustained.  The order sustaining the motion was somewhat indefinite, and thereafter, the defendant filed a motion to set aside the ruling and order, on the ground, among others, that the record does not show that the motion for new trial has been passed upon.  Defendant's said motion was overruled, and the court thereupon specifically ordered that the motion for new trial be granted.  The appeal is from both orders and rulings sustaining the motion and granting the new trial.

The record is somewhat mixed, and there is some un-certainty as to just what counsel upon either side, and the trial court, had in mind.  Appellee suggests for the first time that no verdict was, in fact, rendered by the jury as to Count 1.  It may be that it would have been better practice to have done so, and avoided confusion; but in the district court, they, as well as counsel for defendant, seem to have treated the ruling as final, as to Count 1, by plaintiff's filing a motion for a new trial, and by the defendant's asking the court to rule on plaintiff's motion for new trial.  Appellee argues the rule as to the discretion of the trial court in granting new trials, and urges that the court did not violate the same in setting aside its order directing a verdict for the defendant.  Had there been a verdict by the jury either way, there would have been, by the proceedings had, an adjudication as to Count 1.  The trial court seems to have proceeded upon the theory that, because there was a mistrial as to the second count, he would grant a new trial as to the first, and allow the whole case to stand for retrial; and the plaintiff, in his motion for new trial, suggests the same thought.  Whether this is a ground for new trial, we need not determine.  The plaintiff's motion for new trial does, however, raise the question as to whether plaintiff was entitled to go to the jury at all, on the first count, and whether the court erred in taking

the case from the jury as to said count. We shall treat
the matter as counsel for the parties did. We think the
trial court rightly held that there was no question for the
jury. While it is true, as contended by plaintiff, that there
is a large discretion lodged in the trial court on rulings sus-
taining motions for new trial, and that we seldom interfere
with such rulings, still, if the ruling of the trial court in
directing the verdict was right, and the motion for new
trial improperly sustained, we should so say.

1. It is contended by appellee that the trial court erred
in directing the verdict for the defendant, because, as they
say, the representation made by defendant was a continuing

representation, and it was the duty of de-
fendant, on November 27, 1907, to advise
Mr. Gregory that he had parted with his in-
terest in the store; that, because he failed
to do so, this was a continuing representa-

3. BANKRUPTCY:
discharge of
bankrupt:
non-provable
debts: fraud.

tion. It occurs to us that one difficulty with plaintiff's
proposition is that, on November 27, 1907, defendant could
not advise plaintiff that he had parted with his interest in
the store, for the simple reason that he had not then parted
with it. There is no proof of the falsity of the representa-
tion. On the contrary, the testimony shows that, at the
time the representation was made, and at the time plaintiff
acted thereon, by accepting the note and making the con-
veyance of the land, the representation was true. We do
not understand appellee to claim that he did, or that he
could, rely on the alleged implied fraudulent transaction of
defendant's interest in the store in December, if, indeed,
there was any fraud in that. As before stated, we think
the record does not show that transaction to have been
fraudulent. Plaintiff cites *Brown v. Lobdell, Farwell & Co.,*
51 Ill. App. 574; also, the rule in insurance cases, as stated
in *Equitable Life Assur. Soc. v. McElroy,* 83 Fed. 631.
Counsel quote from the *Brown* case, supra, as follows:

"It was alleged that, to induce the plaintiffs to discount for him certain paper, he made certain specified false statements as to his pecuniary condition; that these statements were then known by him to be false, and were made for the purpose of deceiving and defrauding the plaintiffs, and that, relying upon said false representations, they did discount certain notes for him, which notes are past due, unpaid, and still in their possession. The declaration contains every element of an action for deceit. It was not necessary that, each time the plaintiffs discounted a note for appellant, his representations should be repeated. A state of affairs once shown to exist is presumed to continue until notice is given of a change. *Hutchinson v. Bell,* 1 Taunton 558; *Moyer v. Lederer,* 50 Ill. App. 94."

The facts in that case are quite different from the instant case. It appears that, in the *Brown* case, notes were discounted at different times, and the holding was that it was not necessary that the misrepresentation should have been repeated every time a note was discounted. In the instant case, there was but one transaction, which was closed when the note was executed and the conveyance made, and the representation is not shown to have been false at that time. Counsel quote from the insurance case, supra, that:

"When the representation of good health and the certificate of the surgeon have been made, and the contract is not immediately closed, but negotiations for it continue, and proposals and counter proposals are made, but for some time none are accepted, the representation and certificate continue, and condition all the proposals and the ultimate contract when it is closed. They are all made in reliance upon the continued truth of the representation and certificate, and in the belief that there has been no material change in the health or the probability of the continued life of the subject. The nature of this contract * * * imposes upon him the duty of disclosing to the company every

fact material to the risk which comes to his knowledge at any time before the contract is finally closed. An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract."

The distinction between that case and this is apparent.

2. Appellant quotes the language of the Bankruptcy Act a little differently than appellee, but the substance is about the same, so that we shall not take the space to quote it. Appellant cites *Louisville & Nashville R. Co. v. Bryant,* 149 Ky. 359 (28 Am. Bank. Rep. 867), where the court used this language:

"Fraud is generally divided into two classes, known as actual or positive fraud, and legal or constructive fraud. 20 Cyc., page 8; 14 Am. & Eng. Encyc. of Law, page 19; Bouvier's Law Dict., title Fraud. But the character of fraud necessary to save a demand or judgment from the operation of the Bankruptcy Act is positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without imputation of bad faith or immorality. *Neal v. Scruggs,* 95 U. S. 704 (24 L. Ed. 586) ; *Strang v. Bradner,* 114 U. S. 555 (5 Sup. Ct. 1038, 29 L. Ed. 248). *Forsyth v. Vehmeyer,* 177 U. S. 177 (3 Am. B. R. 807, 20 Sup. Ct. 623, 44 L. Ed. 723) ; *Bullis v. O'Beirne,* 195 U. S. 606 (13 Am. B. R. 108, 25 Sup. Ct. 118, 49 L. Ed. 340)."

See, also, *Cooper Grocery Co. v. Gaddy,* 27 Am. Bank. Rep. 422.

Appellee cites no cases to the contrary, other than those already referred to. Under this record, no false representation is shown to have existed, at the time of the transaction in question. If there was any fraud at all, it is because of defendant's selling his interest in the store after the transaction in question was closed; and it is not

claimed by appellee, as we understand it,—and it could not well be,—that in that transaction there was any false pretense or false representation or obtaining property thereby, —in other words, any active or positive fraud. Under the record and the authorities, we are of opinion that the trial court rightly directed a verdict for the defendant as to the first count of the petition, and that the court erred in setting aside the ruling sustaining defendant's motion for a directed verdict, and in granting a new trial.

This being so, the cause is reversed and remanded, with directions to overrule the plaintiff's motion to set aside the order directing a verdict for defendant, and to overrule plaintiff's motion for new trial.—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.