W. J. HART, Appellee, v. MARTIN STENCE, Appellant.

No. 42419.

NOVEMBER 20, 1934.

REHEARING DENIED MARCH 8, 1935.

Putnam, Putnam, Langdon & Fillmore, for appellant.

Alex Holmes, for appellee.

ANDERSON, J.—The accident out of which this controversy arises occurred about 8:30 o'clock on April 26, 1932, 6 miles east of Oelwein, Iowa, on highway No. 10, in front of what is known in the record as the Van Eman farm. The highway at this point runs east and west, is straight and level for at least one-half mile in both directions from the scene of the accident. Highway No. 10 is paved 18 feet wide. On the evening in question the defendant-appellant, Martin Stence, was driving a truck from Oelwein east on the highway with a 4,200-pound load in addition to the weight of the truck, 4,600 pounds. The truck was stopped immediately in front of the driveway leading to the Van Eman farm buildings just at late dusk, and was parked with its right wheels off of the pavement a distance of probably two feet. The shoulder was soft and the appellant did not drive farther on the shoulder with his heavy load on that account. The lights on the truck were turned off when it was thus parked, and at the time of the accident there were no lights displayed. The appellant had occasion to go into the Van Eman house to make a business telephone call and was gone but a few minutes, and, as he was hurrying back to the truck, there was a collision

between the automobile of the plaintiff and the truck. There is some controversy as to the condition as to light and dark at the time, but it is fair to say it had become quite dark at the time of the collision. The plaintiff-appellee, W. J. Hart, was driving his own car east on the highway in the same direction that the truck was headed. He had three people in the back seat and two people besides himself in the front seat of his car. The passengers other than himself composed an orchestra which he was transporting from Oelwein to Strawberry Point. The plaintiff-appellee testifies that he was traveling 40 or 50 miles an hour; that the truck body was made of native lumber and was practically the color of the pavement, and that he did not see the truck until he was within ten or fifteen feet of it; that shortly before he came into collision with the rear of the truck he passed a car which was going west; that the lights on the approaching car were dimmed and he dimmed his lights as the two cars passed. He testifies that just as he passed the on-coming car there was a dark spot for a second or two and then he saw the truck ten or fifteen feet in front of him; that he applied his brakes and pulled to the left in an effort to avoid a collision but that he was unable to do so. Appellee also testified that he could see objects about 85 feet ahead even when his lights were dimmed. There was evidence in the record, circumstantial and direct, that the appellee's car was being driven at a high rate of speed. His car after the collision was totally demolished and landed on its side probably 150 feet in front of the standing truck. There was also the direct evidence of three disinterested witnesses who followed the plaintiff's car from Oelwein to the point of the collision that they were driving 55 or 60 miles an hour, some 700 or 1,000 feet behind the plaintiff's car all the way from Oelwein to the place of the collision. These witnesses also testified that they could see and did see the parked truck prior and at the time of the collision; that they stopped their car about 30 feet back of the truck after the collision and helped in caring for the persons who were injured. At the close of all the testimony, the material parts of which we have above detailed, the trial court on motion of the defendant directed a verdict for the defendant. Later, on the plaintiff's motion, the verdict was set aside and a new trial granted, from which later order the defendant appeals.

The only question for us to determine is whether or not a verdict should have been directed; if so, the court erred in sustain-

ing the plaintiff's motion to set aside the directed verdict and granting a new trial. The appellee raises the question that the assignments of error are not sufficient under Rule 30 to warrant a review in this court, but we are of the opinion that the assignments sufficiently conform to Rule 30 and apprise this court of the question involved on this appeal. The appellee's motion to set aside the directed verdict, while in eight divisions, raises but the single question that the court erred in directing a verdict for the defendant. The appellee bases his contention on the grounds that the verdict was contrary to the evidence and contrary to law; that the evidence disclosed a case of recklessness as well as negligence on the part of the defendant; that plaintiff was free from contributory negligence; and that if plaintiff was contributorily negligent, such negligence would not be a defense as against recklessness. The trial court in sustaining plaintiff's motion to set aside the directed verdict in effect held that the plaintiff had made a case for the jury, and this must have been on the theory that the plaintiff was free from contributory negligence, or that contributory negligence did not constitute a defense under the circumstances. If the trial court erred in thus holding, then the case must be reversed.

▌ It is recognized that the trial court has a broad discretion in sustaining a motion for a new trial, and ordinarily we reluctantly interfere with such discretion; nevertheless, if the record discloses that the trial court was right in directing a verdict and improperly sustained a motion to set such directed verdict aside, we should not hesitate to reverse such action by the trial court. Such has been our ruling in many cases. Bennett v. Ryan, 206 Iowa 1236, 222 N. W. 16; Busse v. Schaeffer, 128 Iowa 319, 103 N. W. 947; Turley v. Griffin, 106 Iowa 161, 76 N. W. 660; Gregory v. Pierce, 186 Iowa 151, 172 N. W. 288; Kessel v. Hunt, 215 Iowa 117, 244 N. W. 714, and many other cases.

In the Bennett v. Ryan case, supra, Justice Evans used this language:

"If the defendant was entitled to a directed verdict upon the merits, as disclosed in the record, this of itself would ordinarily negative the right of the plaintiff to a new trial. * * * We reach the conclusion that the district court should have directed a verdict for the defendant. The jury having rendered such verdict, the error

was cured. The verdict, therefore, should have been permitted to stand. The order of the district court granting a new trial is therefore reversed."

In Gregory v. Pierce, supra, we said:

"While it is true, as contended by plaintiff, that there is a large discretion lodged in the trial court on rulings sustaining motions for new trial, and that we seldom interfere with such rulings, still, if the ruling of the trial court in directing the verdict was right, and the motion for new trial improperly sustained, we should say so."

This case was reversed and remanded with directions to overrule plaintiff's motion for a new trial and permit a directed verdict to stand.

We have also held that where the ruling upon a motion for a new trial presents a pure question of law, there is no room for the exercise of discretion on the part of the trial court, and that the abuse of discretion lodged in the trial court, under such circumstances, will be reviewed by this court, and the ruling of the trial court reversed if found to be erroneous. Shaw v. Sweeney, 2 G. Greene, 587; Stewart v. Ewbank, 3 Iowa 191; Riley v. Monohan, 26 Iowa 507.

 It must be conceded that the defendant was negligent in leaving his unlighted truck parked upon the highway as is disclosed by the record. There is, however, absolutely no evidence of recklessness as that term has been defined by this court. See Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569. With the concession or assumption that the defendant was negligent, it then becomes pertinent to inquire as to the contributory negligence of the plaintiff. Section 5029 of the 1931 Code provides as follows:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will *permit him to bring it to a stop within the assured clear distance ahead.*" (Italics are ours.)

We have many recent cases construing this section and defining *the assured clear distance ahead.* Wosoba v. Kenyon, supra; Kisling

v. Thierman, supra; Kadlec v. Construction Company, 217 Iowa 299, 252 N. W. 103; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953, 954; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822.

In the last-cited case the facts were not unlike the facts in the case at bar. There the plaintiff collided with the rear end of an unlighted truck. In that case, however, the plaintiff had the excuse that the accident happened on a curve; that he was driving only 20 miles an hour, while in the case at bar the accident happened on a straight, level highway and the plaintiff's own testimony shows that he was driving 40 or 45 miles an hour. In the Peckinpaugh case plaintiff's car was jammed against the standing truck. In the case at bar plaintiff's car was hurtled from 50 to 150 feet east and beyond the defendant's truck and was entirely demolished. In the Peckinpaugh case plaintiff's lights would disclose an object ahead 20 feet, in the present case plaintiff claims his lights would disclose an object 85 feet. In the Peckinpaugh case there were also lighted cars coming from the opposite direction. In that case we held that the plaintiff was guilty of contributory negligence as a matter of law.

The Peckinpaugh case was cited with approval in the Wosoba case, supra. In the Wosoba case we said:

"Because of the statute above quoted [5029], it was incumbent upon the appellant to so adjust his rate of speed that he could stop the automobile in the assured clear distance ahead. This duty was upon the appellant under all the circumstances, including the event of blinding headlights of a car approaching in the opposite direction."

In the Kisling v. Thierman case we held that an operator of an automobile failing to comply with statutory regulations is guilty of negligence, but under certain circumstances such negligence may be avoided by showing a legal excuse therefor, that is, first, any excuse provided for by statute, and, second, that without plaintiff's fault, circumstances render compliance with the statute impossible. There is no attempt on the part of the plaintiff in this case to establish an excuse for his failure to observe the provisions of the statute above quoted.

In Greenland v. City of Des Moines, supra, we said:

"When visibility was lost, the car should have stopped. It availed him nothing to carry automobile lights, if his windshield was obscured. The loss of visibility, and the venture of the driver to proceed without it, was clearly the proximate cause of this accident."

In the Lindquist v. Thierman case, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893, we said:

"If, then, the driver of an automobile, because of the defective lights, cannot see more than ten feet ahead of his car, he must so control the same that he can stop it if necessary within such radius of the lights."

In the instant case, when the plaintiff lost visibility because of the lights of the approaching car, he should have reduced his speed so that when he lost all visibility he could stop immediately. Had he done this, the accident in question would not have occurred. The approaching lights did not constitute a diverting circumstance and plaintiff should have either discovered the presence of the parked truck in the road in time to avoid a collision or should have reduced the speed of his car to such an extent that would permit him to stop within the assured clear distance. Ellis v. Bruce, 217 Iowa 258, 252 N. W. 101.

There is nothing in the case of Kadlec v. Construction Company upon which the plaintiff can rest his position. In that case we held that where a motorist is blinded by lights of an approaching automobile, he is required to stop at once, unless an object on the highway with which he later collides is undiscernible or becomes so by reason of peculiar facts or circumstances beyond the driver's control.

Under the record and our prior pronouncements, we are constrained to hold that the plaintiff was guilty of contributory negligence as a matter of law; that he offered no legal excuse for his violation of the statute quoted; and that his failure to observe the provisions of the quoted statute was negligence and, under this record, caused or contributed to cause the accident in question. It follows that the trial court erred in sustaining plaintiff's motion to set aside the directed verdict and granting a new trial. The case is therefore reversed and remanded with instructions to set aside the

order granting a new trial and permitting the directed verdict and judgment rendered thereon to stand.—Reversed and remanded.

DONEGAN, EVANS, STEVENS, KINDIG, and ALBERT, JJ., concur.

MITCHELL, C. J., and CLAUSSEN, J., dissent.

CLAUSSEN, J. (dissenting)—I am unable to go with the majority of the court in the determination of this case. The conclusion of the majority is in line with the former holdings of this court, and still the case, upon the record, is a very considerable extension of such holdings.

The court has now reached the place in which it holds that there can be no recovery by one driving a motor vehicle upon the highway after nightfall who collides with an unlighted vehicle ahead. It is now the law in Iowa that the driver of every car after nightfall is under the imperative duty to discover every vehicle ahead of him no matter how flagrantly negligent the operator of the vehicle ahead may be.

This result has come through the interpretation by this court of the act of the legislature providing that the driver of every motor vehicle shall operate the same at a speed that is neither greater nor less than is reasonable under all the facts and circumstances and at such speed that it can be stopped within the assured clear distance ahead.

I have stated that this case marks a very decided extension of our holdings. This is true, owing to the fact that there is no evidence in the record that the car could not be stopped within the assured clear distance ahead, except the fact that the plaintiff collided with the defendant's unlighted truck. The accident occurred on a straight, level stretch of road. But an instant before the collision took place, plaintiff encountered a car traveling in the opposite direction. The lights on this car were dimmed. There is no suggestion that they were blinding. In the absence of evidence tending to establish in any degree that defendant drove his car at a rate of speed that would prevent him from stopping within the assured clear distance ahead, or that he drove headlong into a stretch of road which he did not have a reasonable opportunity to observe, the court has denied plaintiff recovery. This must be on the theory that plaintiff was under an imperative duty to discover the truck parked partly on the paving and partly on the shoulder of the road,

which the operator had left unlighted without any excuse or justification, and in violation of a specific statute.

Prior to the enactment of the statute referred to, this court recognized the law to be that the operator of a motor vehicle was under the duty to exercise reasonable care for his own safety and the safety of others, but it had recognized that reasonable care did not require the operator to invariably discover substantial obstacles to safe passage along the highway. Kendall v. City of Des Moines, 183 Iowa 866, 167 N. W. 684; Livingstone v. Dole, 184 Iowa 1340, 167 N. W. 639. But in virtue of this statute, which relates in its entirety to speed, this court has imposed a greater duty than ordinary care upon the motorist in relation to the discovery of obstacles ahead and imposed the imperative duty to discover all obstacles ahead.

I do not believe that such consequence was contemplated by the legislature and I am unable to find language in the statute to warrant it.

The statute was enacted simultaneously with the repeal of the law setting a fixed maximum speed at which motor vehicles might be driven upon the highways of the state. The purpose of the statute is not difficult of ascertainment. With the repeal of the maximum speed limit law, there would be no maximum limit to speed. If in the operation of cars around curves, past obstructions to view, and over hilltops the driver encountered an obstacle in the highway too late to avoid colliding with it, he would urge in justification that while proceeding at a lawful rate of speed the obstacle could only be discovered too late to avoid colliding with it. Undoubtedly to avoid this situation, as well as for a purpose hereinafter referred to, the assured clear distance ahead clause was added to the law.

The purpose of the change in the law was undoubtedly to facilitate more speedy travel on the highways.

Bearing in mind the purpose of the change in the law and giving effect to every word used by the legislature, it is evident that the words "clear distance ahead" do not mean a section of the highway which is entirely free from impediment, but that they mean a section of the highway in which there is an open course ahead in which the car may be driven. The word "assured" is defined as meaning "certain". In this view of the matter the requirement of the statute that the car shall be so driven that it can be stopped within the "assured clear distance ahead" means that the car shall

be so driven that it can be stopped within the distance that a course is certainly open to it on the highway ahead. It is, of course, true that if a driver overtakes a car, the overtaken car is "ahead" but such car is not ahead in the course which the driver will pursue in passing it. If the words "clear distance ahead" mean an entirely unimpeded portion of the highway, the right of the driver to pass an overtaken car—specifically recognized by statute (Code, sections 5021, 5022)—is for all practical purposes taken away, for the driver must in the first instance reduce his speed so that he can stop his car before reaching the overtaken car and must then proceed at such rate of speed that he can ever stop his car before reaching the overtaken car. It may be that a car can be passed in this manner. It may be that the legislature intended to bring about this result, but even a confiding being might well entertain doubts on both propositions.

The word "assured" also means "made sure". It is this meaning which the court has assigned to the word in the construction of the statute. The court has construed the entire phrase to mean a section of the highway that the driver has made sure is entirely unimpeded.

I think it can be demonstrated beyond all doubt that there is no justification for assigning to the word "assured" the meaning "made sure". Bearing in mind that the language under consideration is not the only language of the statute bearing upon the question of speed and that the same section requires that the speed of the car shall ever be reasonable under all the circumstances, it is obvious to me that the language under consideration is intended to limit speed to a rate at which the driver can effectively exercise reasonable care and control the rate of speed so that it is reasonable.

This thought is entirely consistent with all the acts of the legislature regulating the operation of motor cars on the highway. It has been provided that the car shall be equipped with effective brakes, an efficient signaling device, and lights of designated power of illumination, and that it shall be driven so that it can be stopped within the "assured clear distance ahead". The observance of these provisions of law is necessary if the driver of the car is to be in a position to actually use ordinary care in meeting traffic conditions created by the use of the highways by others. It has not been enacted that the driver shall discover all obstacles ahead or that he shall stop before colliding with objects ahead of him. The con-

clusion is inescapable to me that the legislature intended the driver of the car to be in a position to use reasonable care and that it left the ultimate duty resting upon the driver to use this degree of care for his own safety and the safety of others.

In this situation the word "assured" is as effective when defined as "certain" as it is when defined as "made sure", for so far as speed is concerned—and that is what the statute pertains to— one driving so that he can stop within the distance in which a course is "certainly" open ahead can control his speed as effectively as if he were driving it so that he could stop it within the distance that he has "made sure" a course is open ahead. There can be no complaint concerning a speed that will permit the car to be stopped within the distance in which a course is certainly open ahead.

I cannot escape the conclusion that the language under consideration does not prescribe the ultimate or final duty as to speed. I think the ultimate duty as to speed is that it shall be reasonable under all the facts and circumstances.

As a car travels along the highway, the driver is ever being carried into new surroundings. Except when driven at a speed, entirely impractical under ordinary circumstances, an automobile cannot be brought to an immediate stop. Reason suggests that there should be some relationship between the speed with which the driver projects himself into new surroundings and his ability to stop. The statute fixes this relationship. Its requirement is that he shall enter the new surroundings only at a rate of speed which will enable him to stop in the distance between him and the unfolding surroundings in which a course is certainly open to his car. The observance of this much of the law assures the driver constant ability to drive at a rate of speed that is reasonable under all the attending circumstances.

The duty to drive the car so that it can be stopped within the assured clear distance ahead is constant, yet it is remote to any particular accident or incident, for it is a duty to be performed before the scene of the incident is reached. The entire statute imposes two duties, namely the remote duty just referred to and a duty immediate to the incident—to drive at a speed that is reasonable under all the circumstances. The remote duty insures ability to exercise reasonable care. The immediate duty requires that the car be driven at the scene of the accident at a rate of speed that is reasonable under all the circumstances.

The duty to drive so that the car·can be stopped within the assured clear distance ahead may not be far distant in time from any particular incident and still it is truly remote. The end of the "assured clear distance ahead" is not constant. It changes as the car progresses. There must have been time when the place of the accident was the end of the assured clear distance ahead. If at such instant the car was being so driven that it could be stopped before the place of the accident was reached, the duty imposed by this particular language was fully performed, and in that instant such duty was supplanted by the duty to drive the car at a rate that was reasonable under the circumstances. It is perfectly obvious that even though the car were being then driven so that it could not be stopped within the then assured clear distance ahead, if before the scene of the accident was reached the speed had been reduced to one that was reasonable under all the circumstances, the driver would not be answerable for damages.

In that speed at any moment is, to a large extent, the product of what has been done in preceding moments, it is difficult to clearly differentiate the speed with which the scene of the accident is approached from speed at the scene of the accident. It is certain, however, that unless the speed at the time of the accident was unreasonable, a violation of the provision under discussion is of no moment, and, if the speed at the time of the accident was excessive, the violation of duty has proceeded one step further, namely, to a speed that was unreasonable at the place of the accident. A violation of the duty imposed by this language can never be distinguished as a cause of an accident for it is a remote duty. It is a duty which has been superseded before the scene of the accident has been reached. The duty which superseded it is the ultimate duty, and the violation of this duty embraces within itself a violation of every duty as to speed which rested on the driver at the time of the accident. This ultimate duty is to drive at a rate of speed that is reasonable under all the circumstances.

When it is said that it is the duty of the driver to drive at a careful and prudent speed not greater than nor less than is reasonable and proper having due regard to the traffic, surface, and width of the highway and other conditions then existing, the duty as to speed imposed by the statute under consideration on drivers of other than freight carrying vehicles, as to any particular incident or occurrence, has been fully stated.

In consequence of these views I am unable to find in the statute any warrant for imposing upon the plaintiff a greater duty to discover the truck ahead than the use of reasonable care.

I have no quarrel with the majority in so far as it is held that one may not drive into the darkness at a rate of speed so great that he cannot stop within the effective range of vision. Independent of the statute under consideration, or any other statute, all men must agree that such a rate of speed is not consonant with reasonable care. But a person using the highway is not an insurer of his own safety, in the sense that if the vehicle which he is operating collides with some obstacle in the highway, he can, under no circumstances, recover. He is required to use ordinary care for his own safety, and if, in spite of such care, he is injured through the negligence of another, he may recover damages for his injuries. Beyond peradventure, the legislature did not intend to change this by requiring that motor vehicles be equipped with headlights of stated power of illumination. The law does not make it the imperative duty of the driver of a car to discover all objects which such lights may reveal. It is the driver's duty to operate the car, so equipped, with reasonable care, and to make reasonable use of all his senses to discover danger. But "reasonable use of the senses means such use as an ordinarily prudent and careful person would have used under the circumstances". Livingstone v. Dole, 184 Iowa 1340, 167 N. W. 639.

In Kendall v. City of Des Moines, 183 Iowa 866, 167 N. W. 684, action was brought to recover damages resulting from a car being driven through a barricade into an excavation. The accident occurred after dark, on a public street. That the defendant city was negligent was not in dispute, but it was strenuously contended that the driver of the car was guilty of contributory negligence. The evidence indicated that the barriers were discernible at such a distance that the accident could have been avoided. In that case it is said:

"It is, however, the duty of the driver of an automobile to exercise ordinary and reasonable care for his own safety and of the property intrusted to his care. Ordinary care, as applied to the driver of an automobile, is such as prudent men in such occupation ordinarily use, taking into consideration the time, place, condition of the highway, weather, the character of the instrumentality employed, the presence of other travelers or vehicles upon the

streets, the extent to which the same is lighted, and many other facts and circumstances often present and necessary to be considered. * * *

"It is the general rule that the driver of an automobile is required to use reasonable and ordinary care for his own safety, and cannot be held to the absolute duty of observing all defects and obstructions in the highway, but must make such observations as the circumstances reasonably require."

The court held that the plaintiff was not chargeable with contributory negligence as a matter of law.

Any other position would mean that the driver of a car colliding with an obstacle or obstruction on the highway, during the hours of darkness, could, under no circumstances, recover for consequent injuries. Every man would drive his car upon the highway at night at his own peril, regardless of the negligence of those who precede him on the road. Upon the general principles involved see Huggard v. Refining Co., 132 Iowa 724, 109 N. W. 475; 45 C. J. page 947, section 507.

Our more recent cases have held to the other view largely. if not of necessity, as a result of the views on the "assured clear distance ahead" statute, but the cases of Kimmel v. Mitchell, 216 Iowa 366, 249 N. W. 151, Kadlec v. Johnson Const. Co., 217 Iowa 299, 252 N. W. 103, and Carlson v. Jacob E. Decker & Sons, 218 Iowa 54, 253 N. W. 923, are clearly inconsistent with the conclusion of the majority.

This view does not impose an intolerable burden upon those who may encounter trouble upon the highway after nightfall. The statutes (Code 1931, sections 5044–5055-b2) fully regulate the matter of lighting vehicles upon the highway, and define the duties and rights of the operators of motor vehicles in case of failure of lights. Such statutes furnish abundant protection to one who may encounter trouble with lights after dark, for he is not guilty of negligence who conducts himself in accordance with the law. The inevitable result of the holding of the majority is, however, to excuse the most flagrant and wanton failure to comply with the provisions of. the statute through the process of imposing the absolute duty on the drivers of following vehicles to discover the car ahead upon the highway.

I reiterate that the verdict was directed against plaintiff only because he collided with the truck parked partly on the paving and

partly on the shoulder of the road. The truck body was made of native lumber, was unpainted and of the color of the pavement. It had no reflectors on it. It was left unlighted without any excuse or circumstance of justification. Plaintiff was within 10 or 15 feet from the truck when he first observed it. He applied his brakes and diverted his car in an effort to pass by the truck, but the corner of the truck struck his car near the cowl light, and started the car swaying with the ultimate result that the car overturned. There is no evidence in the record as to the distance within which the car could be stopped when driven as it was being driven. For the purpose of the present case, the speed of the car must be taken as 40 miles per hour. The road was straight and level. With the exception of the car which plaintiff passed an instant before the collision, there was no traffic on the highway. The lights of both passing cars were dimmed and there is no suggestion that the lights of the encountered car were blinding. The lights of plaintiff's car complied with statutory requirements. I desire to call attention to one other fact disclosed by the record. Plaintiff testified: "Just as I passed this car there was a dark spot there for a second and then I banged into this truck". It is a matter known to all persons driving cars after dark, and one susceptible of ascertainment by the simple process of riding upon the highway after dark, that the lights of an approaching car, when dimmed and not blinding, illuminate the highway sufficiently to reveal substantial objects on the highway over a considerable distance, before the car actually passes. Just as the car passes, there is a sensation for an instant of there being a dark space ahead. This is, of course, an illusion caused by the cutting off of the light of the passing car. What appears to be the dark spot was but an instant before surveyed in the light of both cars. It appears dark because the light of one car has been withdrawn, but the dark spot is not a portion of the road which the driver has had no opportunity to observe. And beyond the dark spot lies a distance which the lights of the approaching car have illuminated before the sensation of the dark spot is experienced. One who passes a car and experiences the sensation of the dark spot is not plunging into a space which he has had no opportunity to observe, for ahead of him at that instant is a stretch of road which he has had an opportunity to see under the illumination of the approaching car as well as under his own lights. This stretch will vary in length but it is invariably present in a sub-

stantial length. I am not discussing the situation created by blinding lights, or one that may exist on curves or at hilltops or where there is more than one approaching car. The lights on the cars in this case were dimmed and the road was straight and level and there was but one approaching car. The defendant's truck was parked partially on the shoulder and partially on the paving. It was in the most dangerous position, for being to the outer side of the paving it was largely out of the field of illumination of the approaching car. It was parked in violation of statute and was left unlighted without excuse in violation of statute. It had no reflectors or clearance lights on it, which is also a violation of the statute. Code, sections 5054, *5044-d1*. Considering the color of the truck and the other circumstances, *it is difficult to conceive a more dangerous and unlawful trap upon the highway.*

If the statute means that the driver must drive so that he can stop in the distance ahead that he has made sure is free from impediment, the opinion of the majority is right. I conceive, however, that the statute means that the car shall be so driven that it can be stopped within the distance that an open course lies ahead for it, and at a speed that is reasonable. I conceive that the burden resting on the driver is to use reasonable care for his own safety and that in measuring this care he may assume that those who are ahead will observe the law. I cannot conceive an Iowa General Assembly enacting a law relieving the drivers of all cars upon the highways from enforceable duties to the drivers of following cars.

Such being my conceptions of the law, I must respectfully dissent.

MITCHELL, C. J., concurs in dissenting opinion of CLAUSSEN, J.